STATE OF NORTH CAROLINA v. CHALMERS LOWERY GREENLEE

No. COA00-1355

(Filed 6 November 2001)

**1. Drugs— intent to sell and deliver cocaine—sale of cocaine—authentication of chemical analysis report— chain of custody**

N.C.G.S. § 90-95(g)-(g1) does not represent the exclusive procedure for authenticating a report on the chemical analysis of a controlled substance and for establishing chain of custody, and the laboratory report determining that the substance purchased from defendant was cocaine was admissible in an intent to sell and deliver cocaine and sale of cocaine case, because: (1) N.C.G.S. § 90-95(g) merely establishes a procedure through which the State may introduce into evidence the laboratory report of a chemical analysis conducted on an alleged controlled substance without further authentication; (2) a forensic chemist testified and authenticated the report, making it irrelevant whether the State complied with the notice requirements set forth in N.C.G.S. § 90-95(g); and (3) the State's evidence as to the chain of custody was sufficient.

**2. Evidence— officer's testimony—substance bought from defendant—crack cocaine—failure to object—opinion**

The trial court did not err in an intent to sell and deliver cocaine and sale of cocaine case by overruling defendant's objections to a police officer's testimony that the substance he bought from defendant was a rock of crack cocaine, because: (1) the officer mentioned the rock of crack cocaine three times without defendant objecting to the classification; (2) N.C.G.S. § 90-95(g) does not require a chemical analysis before an opinion on the nature of a substance will be admissible; (3) the officer's testimony was proper under N.C.G.S. § 8C-1, Rule 701 as opinion testimony by a lay witness since it was based on his specialized training and work experience; and (4) even if the testimony was inadmissible, it was harmless error since the report established the rock was cocaine.

Appeal by defendant from judgment dated 5 January 2000 by Judge Loto G. Caviness in Buncombe County Superior Court. Heard in the Court of Appeals 16 October 2001.

STATE v. GREENLEE

[146 N.C. App. 729 (2001)]

*Attorney General Roy Cooper, by Assistant Attorney General David G. Heeter, for the State.*

*Leah Broker for defendant-appellant.*

GREENE, Judge.

Chalmers Lowery Greenlee (Defendant) appeals a judgment dated 5 January 2000 and entered consistent with a jury verdict finding Defendant guilty of possession with intent to sell and deliver cocaine and sale of cocaine, N.C.G.S. § 90-95(a)(1) (1999), and of being a habitual felon, N.C.G.S. § 14-7.1 (1999).

On 9 June 1999, Asheville police officers Danny Holden (Holden) and Joseph Palmer were working undercover when Holden bought what he believed to be one rock of crack cocaine from Defendant. After placing the rock in a small piece of plastic, Holden drove away and radioed Defendant's description to another police car. Defendant was arrested almost immediately after his transaction with Holden.

Holden brought the evidence to the Asheville Police Department. He proceeded to weigh the rock and place it, along with the plastic wrap he had previously used to store the rock, into a clear zip-lock-type envelope. He dated and initialed the envelope and placed it inside a yellow narcotics evidence envelope (the evidence envelope), which he then sealed. Holden also completed an SBI-5 Request for Examination of Physical Evidence form (the request form). He placed the request form, along with the evidence envelope, in the drop box of the property control room of the Evidence Annex.

Sandra Burton (Burton), an Asheville Police Department evidence technician, delivered the evidence envelope to Nancy Somrak (Somrak), a State Bureau of Investigation (SBI) evidence technician, who in turn gave the evidence envelope to Special Agent and Forensic Chemist Jay Pintacuda (Pintacuda) for analysis of the substance within. Upon receipt and delivery, each individual signed their name in the chain of custody section of the request form.

The testing conducted by Pintacuda determined that the rock indeed consisted of cocaine, which Pintacuda noted in his laboratory report (the report). At trial, Holden stated he had been in law enforcement for seventeen years with approximately 500 hours of specialized training in narcotics investigation and experience working with the

drug task force. During the course of his testimony, Holden at least five times referred to the substance he had bought from Defendant as a "rock of crack cocaine." Defendant did not object to the classification as "crack cocaine" until Holden's fourth reference. Both Holden and Pintacuda testified that the substance entered into evidence appeared to be in substantially the same condition as when they had last seen it. Pintacuda also testified that he recognized Burton's and Somrak's signature on the chain of custody portion of the request form and that he had received the evidence envelope in a sealed condition.

The issues are whether: (I) N.C. Gen. Stat. § 90-95(g)-(g1) represents the exclusive procedure for authenticating a report on the chemical analysis of a controlled substance and for establishing chain of custody; and (II) the trial court erred in permitting Holden to testify that the substance he bought from Defendant was "crack cocaine."

I

**[1]** Defendant argues the State did not comply with the conditions set forth in N.C. Gen. Stat. § 90-95(g)-(g1) and therefore the report determining the substance purchased from Defendant to be cocaine was inadmissible. We disagree.

Section 90-95(g) merely establishes a procedure through which the State may introduce into evidence the laboratory report of a chemical analysis conducted on an alleged controlled substance without further authentication. N.C.G.S. § 90-95(g) (1999); *State v. Carr*, 145 N.C. App. 335, 339, 549 S.E.2d 897, 900 (2001). It, however, does not establish the exclusive method for authenticating such a report. In this case, the trial court was not presented with a self-authenticating document as section 90-95(g) envisions. Pintacuda himself testified and authenticated the report. It is therefore irrelevant whether the State complied with the notice requirements set forth in section 90-95(g).

Defendant also argues that admission into evidence of the chain of custody signed by Burton, Somrak, and Pintacuda on the request form was error because the State did not comply with the conditions set forth in N.C. Gen. Stat. § 90-95(g1)(3) and was therefore required to call as witnesses all persons who had handled the rock Holden had bought. This contention is misplaced. Section 90-95(g1) provides a procedure for establishing the chain of custody of a piece of evidence

without having to call unnecessary witnesses. N.C.G.S. § 90-95(g1) (1999). The statute states:

> a statement signed by each successive person in the chain of custody that the person delivered it to the other person indicated on or about the date stated is *prima facie evidence* that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement.

N.C.G.S. § 90-95(g1)(1) (1999) (emphasis added). This statute, however, does not dictate the only proper method of proving the chain of custody when not all persons in the chain are called to testify.

A detailed chain of custody has to be established "only if the evidence offered is not readily identifiable or is susceptible to alteration and such alteration has been alleged." *State v. Brown*, 101 N.C. App. 71, 75, 398 S.E.2d 905, 907 (1990). If there are weak links in the chain of custody, as Defendant contends, these links relate to the weight of the evidence, not its admissibility. *Id.*

In this case, Holden testified he sealed the evidence envelope and put it in a drop box. When Pintacuda received the evidence envelope, it was still sealed. Both Holden and Pintacuda testified that the substance appeared to be in the same condition as when they had last seen it. Consequently, the State's evidence as to chain of custody was sufficient, and the trial court did not err in admitting either the report or Pintacuda's testimony as to the results of his laboratory analysis into evidence.

II

[2] Defendant further argues Holden's reference in his testimony to that "rock of crack cocaine" was error. Because Holden mentioned the "rock of crack cocaine" three times without Defendant objecting to the classification, this assignment of error was not properly preserved for appeal. *See* N.C.R. App. P. 10(b)(1). Furthermore, section 90-95(g) does not require a chemical analysis before an opinion on the nature of a substance will be admissible. Holden's testimony was proper under N.C. Gen. Stat. § 8C-1, Rule 701 as opinion testimony by a lay witness because it was based on his specialized training and work experience. *See* N.C. Gen. Stat. § 8C-1, Rule 701; *State v. Rich*, 132 N.C. App. 440, 512 S.E.2d 441 (1999), *aff'd*, 351 N.C. 386, 527 S.E.2d 299 (2000) (police officer who had years of experience in the

IN RE ESTATE OF HANNER

[146 N.C. App. 733 (2001)]

enforcement of motor vehicle laws and investigated nearly 200 driving while impaired cases was competent to express an opinion that the defendant was under the influence of alcohol at the time of the accident). In any event, even if Holden's testimony were inadmissible, it would be harmless error because the report established the rock to be cocaine. The trial court therefore did not err in overruling Defendant's objections to Holden's testimony.

No error.

Judges HUNTER and THOMAS concur.