STATE OF NORTH CAROLINA v. MARIO LLAMAS-HERNANDEZ

No. COA07-566

(Filed 15 April 2008)

### 1. Evidence— lay witness testimony—detectives—cocaine

The trial court did not abuse its discretion in a trafficking in cocaine by possession of 28 grams or more but less than 200 grams case by admitting the lay witness testimony of two detectives that a white powder substance found in an apartment leased by defendant was cocaine because: (1) North Carolina law favors admissibility of lay opinion testimony where the witness has personal knowledge of the subject; (2) an officer's training and experience is sufficient personal knowledge to form the basis of lay opinion testimony that a substance is a narcotic; (3) although *Rogers*, 28 N.C. App. 1001 (1975), implies that a law enforcement officer's training and experience alone do not qualify that officer to give an opinion concerning the chemical makeup of a white powder, the Court of Appeals was compelled under *Freeman*, 185 N.C. App. 408 (2007), to hold that the evidence with respect to both officers' training and experience in dealing with narcotics was sufficient to show a rational basis for their opinions that the substance was cocaine; and (4) although the dissent seemed to suggest that lay opinion testimony identifying a substance as crack cocaine might perhaps be admissible while the same testimony concerning powder cocaine may not, there was no support in the case law for this distinction.

### 2. Constitutional Law— effective assistance of counsel—failure to object—objective standard of reasonableness

A defendant was not denied effective assistance of counsel in a trafficking in cocaine by possession of 28 grams or more but less than 200 grams case based on his trial attorney's failure to object to the testimony of two detectives stating the white powder substance found in an apartment leased by defendant was cocaine because: (1) a review of the record revealed that defense counsel did in fact object to the detectives' testimony on multiple occasions; (2) during an evidentiary discussion with the trial court, defense counsel specifically stated she objected to this testimony since the State had not provided her with a lab report analyzing the substance, and these objections were acknowledged by the trial court; and (3) although defense counsel did not object to

the police chemical analyst's testimony, the failure did not fall below an objective standard of reasonableness or prejudice defendant when the witness was an expert in chemical analysis of controlled substances.

**3. Drugs— trafficking in cocaine by possession of 28 grams or more but less than 200 grams—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of trafficking in cocaine by possession of 28 grams or more but less than 200 grams because: (1) in order for the State to meet its burden of the weight element for the offense of trafficking in cocaine, the State must either offer evidence of its actual measured weight or demonstrate that the quantity of the controlled substance itself was so large as to permit a reasonable inference that its weight satisfied this element; (2) two detectives both testified that they weighed the white powder cocaine and that it weighed 55 grams; and (3) the jury could reasonably infer that the statutory threshold for trafficking was satisfied.

**4. Joinder— charges—same series of events—common scheme**

The trial court did not abuse its discretion by granting the State's motion to join the two charges of trafficking in cocaine because: (1) the two charges arose from the same series of events on the same day; (2) the evidence indicated a common scheme to sell drugs; and (3) defendant failed to satisfy his burden of showing he was deprived of a fair trial and prejudiced as a result of the joinder.

Judge STEELMAN concurring in part and dissenting in part.

Appeal by defendant from judgment entered 14 September 2006 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 January 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Scott K. Beaver, for the State.*

*Public Defender Kevin P. Tully, by Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

MARTIN, Chief Judge.

Mario Llamas-Hernandez ("defendant") was charged in 05 CRS 244830 with one count of trafficking in cocaine by possession of 400 grams or more of cocaine, in violation of N.C.G.S. § 90-95(h)(3)c (2007), and in 05 CRS 244832 with one count of trafficking in cocaine by possession of 28 grams or more, but less than 200 grams, of cocaine in violation of N.C.G.S. § 90-95(h)(3)a (2007). He was convicted by a jury of the charge of trafficking in cocaine by possession of 28 grams or more, as charged in 05 CRS 244832. The jury was unable to reach a unanimous verdict as to the charge of trafficking in 400 grams or more of cocaine as charged in 05 CRS 244830, and a mistrial was declared in that case.

Pursuant to a plea agreement, defendant then pled guilty in 05 CRS 244830 to the charge of trafficking in cocaine by possession of more than 200 grams but less than 400 grams. The two charges were consolidated for sentencing, and defendant was sentenced to imprisonment for a minimum term of 70 months and a maximum term of 84 months. Defendant appeals.

The State presented evidence at trial which tended to show that in April 2005 Charlotte-Mecklenburg Detective Jorge Olmeda began working with an informant who provided him with information about drug trafficking activity. On 16 September 2005 the informant arranged a meeting with Oseil Lopez-Tucha at a restaurant to negotiate a sale of cocaine. On 24 September 2005 the informant met Lopez-Tucha in the parking lot of a Bi-Lo supermarket to purchase cocaine. Lopez-Tucha called defendant from the parking lot. Defendant told Lopez-Tucha and the informant to meet him at 6506 Yateswood Road, and stated that he would be driving a green Suburban. Lopez-Tucha and the informant went to Yateswood Road and saw the Suburban. Defendant took Lopez-Tucha and the informant into the residence at 6506 Yateswood Road, and defendant told the informant that he had a kilogram of cocaine for him to purchase. The informant left the room and called the police.

Police officers arrived on the scene approximately five minutes later with a search warrant. Detective Olmeda arrived and discovered a woman, Elvira Villa-Gomez, in the Suburban. Detective Olmeda's partner, Detective Stephen Whitesel, went into the apartment and found the informant, Lopez-Tucha, and defendant in the master bedroom. The informant told Detective Olmeda that cocaine was located

underneath a large teddy bear in the master bedroom. Detective Whitesel looked under the teddy bear and found a package containing a kilogram of white powder. Jennifer Mills, a chemical analyst with the Charlotte-Mecklenburg Police Department, gave expert testimony that chemical testing revealed that the substance "contained cocaine." This substance formed the basis of the charge contained in 05 CRS 244830, in which defendant entered a negotiated guilty plea.

Detective Olmeda interviewed Villa-Gomez and obtained her consent to search her home at 4113 Craig Avenue. The Craig Avenue residence was leased to Villa-Gomez and defendant. Detective Olmeda and Detective Whitesel searched the residence and found a white powdery substance weighing approximately 55 grams in the linen closet. Although a chemical analysis was performed on this substance, the report was not admitted at trial. Over defendant's objection, Detectives Olmeda and Whitesel were permitted to testify as lay witnesses that the substance found at Craig Avenue was cocaine. Mills also testified that in her opinion the substance found at Craig Avenue was similar to the substance found at Yateswood Road, the case in which defendant pled guilty. The substance found at Craig Avenue formed the basis of the charge contained in 05 CRS 244832.

---

[1] The issues raised in this appeal relate only to the defendant's conviction of trafficking in 28 grams or more, but less than 200 grams, of cocaine as charged in 05 CRS 244832, which involved the substance found at 4113 Craig Avenue. Defendant argues the trial court erred by admitting the lay witness testimony of Detectives Olmeda and Whitesel that the substance found at 4113 Craig Avenue was cocaine. When reviewing a trial court's rulings on the admission or exclusion of lay witness or expert testimony, we review for abuse of discretion. *State v. Washington*, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000).

N.C.G.S. § 8C-1, Rule 701 governs the admission of lay witness opinion testimony and provides that a lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2007). "As long as the lay witness has a basis of personal knowledge for his opinion, the evidence is admissible." *State v. Bunch*, 104 N.C. App. 106, 110, 408 S.E.2d 191, 194 (1991).

In *State v. Freeman,* 185 N.C. App. 408, 648 S.E.2d 876, 881-82 (2007), *appeal dismissed,* 362 N.C. 178, 657 S.E.2d 663 (Jan. 7, 2008) (No. 475A07), *reconsideration denied,* 362 N.C. 178, 657 S.E.2d 666 (Jan. 18, 2008) (No. 475A07), another panel of this Court held that the trial court did not abuse its discretion in admitting lay opinion testimony of a police officer that pills found on defendant were crack cocaine. In that case Police Officer Christopher Miller recovered a pill bottle which the defendant dropped upon being confronted by Officer Miller and other officers. *Id.* at 411, 648 S.E.2d at 879-80. "Inside the pill bottle, Officer Miller discovered a variety of white pills and believed that two of them were crack cocaine." *Id.* at 411, 648 S.E.2d at 880. At defendant's trial on the charge of possession of cocaine, Officer Miller was permitted, without objection, to testify that, in his opinion, two of the pills contained in the bottle were crack cocaine. *Id.* at 414-15, 648 S.E.2d at 882. In addition, an expert chemist testified "that she analyzed the pills and determined that they were cocaine[.]" *Id.* As defendant did not object to Officer Miller's testimony, defendant argued on appeal that the trial court committed plain error in allowing Officer Miller to so testify. *Id.* at 415, 648 S.E.2d at 881. The Court said:

> Pursuant to Rule 701 of the North Carolina Rules of Evidence, "[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2005). "As long as the lay witness has a basis of personal knowledge for his opinion, the evidence is admissible." *State v. Bunch,* 104 N.C. App. 106, 110, 408 S.E.2d 191, 194 (1991) (holding that an officer's testimony concerning practices of drug dealers was admissible lay opinion as it was based on personal knowledge and helpful to the jury).

> Officer Miller testified that two of the pills in the pill bottle seized during defendant's arrest were crack cocaine and that he based his identification of the pills as crack cocaine on his extensive training and experience in the field of narcotics. Officer Miller, who had been with the police department for eight years at the time, testified that he had come into contact with crack cocaine between 500 and 1000 times. As Officer Miller's testimony on this issue was helpful for a clear understanding of his overall testimony and the facts surrounding defendant's arrest,

the trial court did not abuse its discretion, much less commit plain error, in permitting Officer Miller to testify as to his opinion that the pills were crack cocaine. Defendant's argument, therefore, is overruled.

*Id.* at 414-15, 648 S.E.2d at 881-82. In its analysis and discussion of the admissibility of Officer Miller's contention, the Court apparently did not consider the testimony of the expert chemist, only Officer Miller's personal knowledge based on his training and experience. *Id.* at 414, 648 S.E.2d at 881-82.

Were we confronting this issue anew, we would be inclined to reach a different interpretation of Rule 701 than that reached by the *Freeman* panel. We acknowledge that North Carolina law favors admissibility of lay opinion testimony where the witness has personal knowledge of the subject about which he or she is testifying. *See* 2 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 181, at 23 (6th ed. 2004) ("A lay witness may give his opinion as to the identity of a person or object he has seen, and his lack of positiveness affects only the weight, not the admissibility of his testimony."); *State v. Yelton,* 175 N.C. App. 349, 354, 623 S.E.2d 594, 597 (2006) (holding that drug user could testify that a substance she smoked was methamphetamine); *State v. Rich,* 132 N.C. App. 440, 449, 512 S.E.2d 441, 448 (1999) (holding that an officer testifying as a lay witness could give his opinion as to whether a person involved in a car accident was intoxicated "based on his experience as a law enforcement officer in conjunction with his observations of the circumstances surrounding the collision"). Further, our Court has held that an officer's training and experience is sufficient personal knowledge to form the basis of lay opinion testimony that a substance is a narcotic. *Freeman,* 185 N.C. App. at 414, 648 S.E.2d at 882; *see also* Broun, § 181, at 23 (citing *dicta* in *State v. Greenlee,* 146 N.C. App. 729, 732, 553 S.E.2d 916, 918 (2001), for the proposition that "[a] police officer [is] properly permitted to identify substance as a 'rock of crack cocaine' as lay testimony based on specialized training and work experience").

However, we find instructive *dicta* contained in this Court's opinion in *State v. Rogers,* 28 N.C. App. 110, 113-14, 220 S.E.2d 398, 400-01 (1975), where a deputy sheriff was permitted to testify that white powder seized from a car in which the defendant was a passenger contained heroin. An expert chemist also testified that the substance was heroin. *Id.* at 114, 220 S.E.2d at 401. Defendant

assigned error to the deputy's testimony. *Id.* at 113, 220 S.E.2d at 400. The Court wrote:

> Defendant assigns error to the court's overruling his objection and allowing [the deputy sheriff] to testify that from his examination of the white powder found in the five tinfoil packets, in his opinion the white powder contained heroin. The witness had previously testified that he had approximately twenty-five hours training in the identification of controlled substances, both through the S.B.I. and the Federal Government, that he had three and a half years experience "working with drugs on the street," and that he had examined heroin "numerous times." He was not asked, either on direct or on cross-examination, as to what his "examination" of the white powder consisted of, or as to what tests, if any, he made in the course of that "examination." *Had such questions been asked, it would be easier to evaluate the witness's qualification to testify to the opinion called for*, and the jury could have assessed more accurately the weight which it might give to the opinion expressed. In any event, in view of the subsequent testimony of the S.B.I. chemist, we find no prejudicial error in the court's ruling in the present case.

*Id.* at 113-14, 220 S.E.2d at 400-01 (emphasis added). The implication of *Rogers* is that a law enforcement officer's training and experience alone do not qualify that officer to give an opinion concerning the chemical makeup of a white powder. Indeed, while training and experience are relevant to the qualification of a witness as an expert, *see* N.C. Gen. Stat. § 8C-1, Rule 702 (2007) ("[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion."), we question whether they are "perceptions" of the witness. It seems to us that to allow a lay witness, even a police officer with extensive training and experience, to render an opinion that white powder is cocaine based solely upon the witness's visual examination, is little more than speculation, and is not based on perception, for the visual characteristics of cocaine in powder form are not unique to that substance alone. *See, generally*, Michael D. Blanchard & Gabriel J. Chin, *Identifying the Enemy in the War on Drugs: A Critique of the Developing Rule Permitting Visual Identification of Indescript White Powder in Narcotics Prosecutions*, 47 Am. U. L. Rev. 557 (1998). Notably, the ease with which a person may pass off a counterfeit controlled substance as an actual controlled substance has prompted our General Assembly to enact legislation making it a Class I felony to "create, sell or deliver,

or possess with intent to sell or deliver, a counterfeit controlled substance." N.C. Gen. Stat. § 90-95(c), (a)(2) (2007).

However, though the holding in *Freeman* concerns us for the reasons stated above, we are bound to follow it. *State v. Jones*, 358 N.C. 473, 487, 598 S.E.2d 125, 134 (2004) ("While . . . a panel of the Court of Appeals may disagree with, or even find error in, an opinion by a prior panel and may duly note its disagreement or point out that error in its opinion, the panel is bound by that prior decision until it is overturned by a higher court."). In the present case, the trial court acknowledged that both Detective Olmeda and Detective Whitesel were testifying as lay witnesses. Both detectives have experience in the identification of controlled substances. At the time of the trial, Detective Olmeda had worked for the Charlotte-Mecklenburg police for six and a half years and was assigned to the Vice and Narcotics Bureau, where he investigated and infiltrated drug organizations. He received six months of intensive drug investigation training prior to this assignment. He previously worked in the Drug Crimes Interdiction Unit. Detective Whitesel testified that he had worked for the Mecklenburg Police Department for sixteen years and with Vice and Narcotics for two and a half years. He received four and a half months of drug investigation training before being assigned to Vice and Narcotics. He also testified that he had between 760 to 800 hours of training on identifying controlled substances, that in his sixteen-year tenure with the Mecklenburg Police Department he had seen cocaine "approximately two and three times a week, between 1600 and 2000 times[,]" and that he has never submitted a substance that he thought was cocaine for chemical analysis that did not in fact test positive for cocaine. Following the decision in *Freeman*, we are compelled to hold that the evidence with respect to both officers' training and experience in dealing with narcotics was sufficient to show a rational basis for their opinions that the substance found at Craig Avenue was cocaine, and the trial court did not abuse its discretion in admitting their testimony.

Expressing reservations similar to those which we have expressed above, the dissent seeks to distinguish *Freeman* on the basis that the substance involved in that case was crack cocaine, while the substance involved here is cocaine in powder form. The distinction, according to the dissent, is that powder cocaine is more nondescript and has less distinct properties than crack cocaine and, therefore, cannot be as easily identified by a layperson as can crack cocaine, which "has a distinctive color, texture, and appearance." Thus, the

dissent suggests that lay opinion testimony identifying a substance as crack cocaine might perhaps be admissible, while the same testimony concerning powder cocaine would not. We find no support in the case law for this distinction. Indeed, the *Freeman* panel made no distinction between the different forms of cocaine and did not discuss whether the particular form of a narcotic impacts the admissibility of lay opinion testimony. In any event, the crack cocaine in *Freeman* was described as being in pill form, rather than in rock form. Thus, we do not find the form of a narcotic to be determinative, and we must follow *Freeman*.

[2] Defendant next argues that he was denied the effective assistance of counsel because his trial attorney failed to object to the testimony of Olmeda and Whitesel that the substance found at Craig Avenue was cocaine. "In order to successfully challenge a conviction on the basis of ineffective assistance of counsel, defendant must demonstrate: 1) that his trial counsel's performance 'fell below an objective standard of reasonableness[;]' and 2) that this deficiency in performance was prejudicial to his defense." *State v. Lemonds*, 160 N.C. App. 172, 177, 584 S.E.2d 841, 845 (2003) (quoting *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985)).

A review of the record reveals that defense counsel did in fact object to the detectives' testimony on multiple occasions. In addition, during an evidentiary discussion with the trial court, defendant's counsel specifically stated that she objected to the testimony of Olmeda and Whitesel because the State had not provided her with a lab report analyzing the substance found at Craig Avenue, and these objections were acknowledged by the trial court. We note that defense counsel did not object to Mills' testimony, but this did not fall below an objective standard of reasonableness or prejudice defendant, as Mills was an expert in chemical analysis of controlled substances. *See State v. Bullard*, 312 N.C. 129, 139-40, 322 S.E.2d 370, 376 (1984) ("It is undisputed that expert testimony is properly admissible when such testimony can assist the jury . . . . The trial judge is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony."). Therefore, this assignment of error is overruled.

[3] Defendant next argues that the trial court erred in denying his motion to dismiss the charge where the evidence was insufficient for a rational trier of fact to find each and every element of the offense of trafficking in cocaine by possession beyond a reasonable doubt. We disagree.

N.C.G.S. § 90-95(h)(3) (2007) provides, in pertinent part, that "[a]ny person who . . . transports, or possesses 28 grams or more of cocaine . . . shall be guilty of a felony, . . . and . . . shall be sentenced to a minimum term of 35 months and a maximum term of 42 months . . . ." N.C. Gen. Stat. 90-95(h)(3), (h)(3)a (2007). Consequently, "[t]he elements the State must prove beyond a reasonable doubt to support a conviction of trafficking in cocaine or methamphetamine by possession is that defendant: '(1) knowingly possess[ed] cocaine and (2) that the amount possessed was 28 grams or more.'" *State v. Cardenas*, 169 N.C. App. 404, 409, 610 S.E.2d 240, 243-44 (2005) (quoting *State v. White*, 104 N.C. App. 165, 168, 408 S.E.2d 871, 873 (1991)). In order for the State to meet its burden of the weight element for the offense of trafficking in cocaine the State "must either offer evidence of its actual, measured weight or demonstrate that the quantity of [the controlled substance] itself is so large as to permit a reasonable inference that its weight satisfied this element." *State v. Mitchell*, 336 N.C. 22, 28, 442 S.E.2d 24, 27 (1994).

In the present case, Lopez-Tucha testified that defendant planned to sell cocaine to the informant. Cocaine was found at the defendant's residence and in close proximity to defendant at Yateswood Avenue where he met Lopez-Tucha and the informant in order to arrange the sale of cocaine. Detective Olmeda and Detective Whitesel testified that they believed that the substance was cocaine, and Mills testified that the substance was similar to the cocaine found at Yateswood Road. Detective Whitesel and Mills both testified that they weighed the cocaine found at Craig Avenue and that it weighed 55 grams. Therefore, the jury could reasonably infer that the statutory threshold for trafficking was satisfied. This assignment of error is overruled.

[4] Defendant next argues that the trial court erred by granting the State's motion to join the two charges of trafficking in cocaine. N.C.G.S. § 15A-926(b)(2) (2007) states that joinder is appropriate:

a. When each of the defendants is charged with accountability for each offense; or

b. When . . . the several offenses charged:

1. Were part of a common scheme or plan; or

2. Were part of the same act or transaction; or

3. Were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others.

N.C. Gen. Stat. § 15A-926(b)(2) (2007). Further, "[t]he propriety of joinder depends upon the circumstances of each case and is within the sound discretion of the trial judge." *State v. Pickens*, 335 N.C. 717, 724, 440 S.E.2d 552, 556 (1994). The trial court's decision to consolidate cases for trial will not be disturbed on appeal absent a showing that joinder resulted in defendant receiving an unfair trial. *Id.*

Here, the trial court joined defendant's two cocaine trafficking charges, 05 CRS 244830 and 05 CRS 244832. These charges arose from the same series of events on the same day, and the evidence indicated a common scheme to sell drugs. Further, defendant has failed to satisfy his burden by showing he was deprived of a fair trial and prejudiced as a result of the joinder. Consequently, the trial court did not abuse its discretion, and we overrule this assignment of error.

No error.

Judge STEPHENS concurs.

Judge STEELMAN concurs in part and dissents in part with separate opinion.

STEELMAN, Judge, concurring in part and dissenting in part.

I concur in the portions of the opinion that question the rationale of this Court's holding under Rule 701 of the North Carolina Rules of Evidence in *State v. Freeman*, 185 N.C. App. 408, 648 S.E.2d 876 (2007), and the portions of the opinion pertaining to joinder. I must respectfully dissent to the portions of the opinion allowing a detective to express a lay opinion as to the chemical composition of a white powder and upholding the trial court's denial of defendant's motion to dismiss.

Initially, it should be noted that the defendant pled guilty to the Class F offense of trafficking in cocaine and received the mandatory sentence of 70-84 months. The issues involved in this case pertain to the guilty verdict as to the Class G offense of trafficking in cocaine, which was consolidated with the Class F offense for purposes of judgment. Regardless of whether the defendant's conviction for the Class G offense is upheld or reversed, he will still serve a sentence of 70-84 months imprisonment for the Class F trafficking offense. Nonetheless, under the rationale of *State v. Speckman*, 326 N.C. 576, 580, 391 S.E.2d 165, 168 (1990), the consolidation of the two convictions does not render the error of the trial court harmless.

## I. Additional Factual and Procedural Background

Detective Olmeda testified in this case that at the Craig Avenue address they found 55 grams of cocaine. Defendant objected to this testimony. While the State elicited testimony as to Olmeda's experience in undercover drug operations, no testimony was elicited concerning his ability to identify controlled substances by sight.

At the trial of this case, the State sought to offer into evidence a laboratory report concerning 55 grams of white powder. Defendant's counsel objected, stating that she had requested any such report in discovery, and that she had been told by the district attorney's office that they would not be testing the smaller amount. As a result, no effort was made by defendant to have the 55 grams of white powder tested. The State acknowledged that the report was not provided, even though the testing was done nine months prior to trial. The trial court excluded the lab report as a discovery sanction pursuant to N.C. Gen. Stat. § 15A-910(a)(3) (2007). Following this ruling, the trial court permitted Detective Whitesel to give a lay opinion concerning the 55 grams of white powder. He testified that in his opinion it was cocaine. No preliminary testing of any kind was performed on the substance. The identification of the 55 grams as being cocaine was based solely upon his visual observations. No testimony was offered as to why he believed that the white powder was cocaine other than his extensive experience in handling drug cases. No testimony was offered as to any distinguishing characteristics of the 55 grams of white powder, such as its taste or texture.

Jennifer Mills, a chemical analyst with the Charlotte-Mecklenburg Police Department, testified that a visual examination of a controlled substance is merely a preliminary test, and is not conclusive.

## II. Analysis

Our courts frequently are confronted with cases involving two types of cocaine; powdered cocaine and crack cocaine. Powdered cocaine is a non-descript white powder. Crack cocaine is an off-white pasty substance that comes in small blobs, referred to in street parlance as "rocks." *See generally* Blanchard & Chin, *Identifying the Enemy in the War on Drugs: A Critique of the Developing Rule Permitting Visual Identification of Indescript White Powder in Narcotics Prosecutions*, 47 Amer. U. L. Rev. 557 (1998).

A. North Carolina Statutes Dealing With Controlled Substances

Article 5 of Chapter 90 of the North Carolina General Statutes is the North Carolina Controlled Substances Act. A controlled substance is defined as "a drug, substance, or immediate precursor included in Schedules I through VI of this Article." N.C. Gen. Stat. § 90-87(5) (2007). The statute then goes on to describe in great chemical detail the substances prohibited in Schedules I through VI. For example, cocaine is described in Schedule II as follows:

> Cocaine and any salt, isomer, salts of isomers, compound, derivative, or preparation thereof, or coca leaves and any salt, isomer, salts of isomers, compound, derivative, or preparation of coca leaves, or any salt, isomer, salts of isomers, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocanized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

N.C. Gen. Stat. § 90-90(1)(d) (2007). There are different definitions of isomers for different controlled substances. For purposes of cocaine, isomer means "the optical isomer or diastereoisomer." N.C. Gen. Stat. § 90-87(14a). Optical isomers are compounds with the same molecular formula but which act in opposite ways on polarized light. *See* Ducor, *New Drug Discovery Technologies and Patents*, 22 Rutgers Computer & Tech. L.J. 369, 379 (footnote 47) (1996). Diastereoisomers are compounds whose molecules are not mirror images but each molecule rotates polarized light. *See* Strong, *FDA Policy and Regulation of Stereoisomers: Paradigm Shift and the Future of Safer, More Effective Drugs*, 54 Food Drug L.J. 463 (1999).

By enacting such a technical, scientific definition of cocaine, it is clear that the General Assembly intended that expert testimony be required to establish that a substance is in fact a controlled substance. This is how drug cases have been handled and tried in the Superior Courts of this State for many years. Officers gather the evidence, carefully identify it with control numbers and submit it to a laboratory for chemical analysis. If the laboratory testing reveals the presence of a controlled substance, the prosecution of the defendant goes forward. If the laboratory testing reveals that no controlled substance is present, then the case is dismissed by the prosecutor.

The General Assembly has further set forth procedures for the admissibility of such laboratory reports. *See* N.C. Gen. Stat.

§ 8-58.20, 90-95(g) and (g1). N.C. Gen. Stat. § 15A-903 provides that criminal defendants have broad pretrial access to discovery of materials obtained or prepared for the prosecution for use in its case in chief, including "not only conclusory laboratory reports, but also any tests performed or procedures utilized by chemists to reach such conclusions." *State v. Dunn*, 154 N.C. App. 1, 8, 571 S.E.2d 650, 655 (2002) (quotation and emphasis omitted). This is due to "the extraordinarily high probative value generally assigned by jurors to expert testimony . . ." *Id.* at 6, 571 S.E.2d at 654 (quotation omitted).

I submit that if it was intended by the General Assembly that an officer could make a visual identification of a controlled substance, then such provisions in the statutes would be unnecessary.

## B. Lay Opinion Under Rule 701

The majority relies primarily upon the case of *State v. Freeman*, 185 N.C. App. 408, 648 S.E.2d 876 (2007) to support its holding that a law enforcement officer can express a lay opinion under Rule 701 of the North Carolina Rules of Evidence as to the composition of a controlled substance.

### 1. State v. Freeman

In *Freeman*, police in Charlotte arrested an armed robbery suspect, who had in his possession what "looked like a pill bottle." *Id.* at 411, 648 S.E.2d at 879. This container contained a "variety of white pills," two of which the arresting officer believed to be crack cocaine. *Id.* at 411, 648 S.E.2d at 880. These two items were tested by the Charlotte-Mecklenburg Police Crime Laboratory and found to be cocaine, having a weight of .22 grams. *Id.*

One of defendant's assignments of error was that the trial court committed plain error by allowing the officer to testify that the two items seized were crack cocaine. *Id.* at 414, 648 S.E.2d at 881. In light of the lab report confirming that it was cocaine, the admission of the officer's statement was clearly not plain error. However, this Court went on to hold that it was permissible under Rule 701 for the officer to render an opinion that the substance was cocaine. *Id.* at 414, 648 S.E.2d at 882. In so holding, this Court relied solely upon the case of *State v. Bunch*, 104 N.C. App. 106, 408 S.E.2d 191 (1991).

*State v. Bunch, supra*, held that an officer, based upon his experience, can testify as to common practices of drug dealers. *Id.* at 110, 408 S.E.2d at 194. The testimony dealt with the practice that one per-

son in a drug deal holds the money, and another holds the drugs. *Id.* This testimony dealing with custom and practice in drug deals is completely different from an officer testifying as to the chemical composition of a purported controlled substance under Chapter 90 of the General Statutes. *Bunch* in no way supports the holding of *Freeman* that an officer can give a lay opinion that a substance is cocaine.

In *Freeman*, the substance involved was crack cocaine, not powdered cocaine. A review of the opinion, briefs and record in that case does not reveal anything about the appearance of the cocaine other than to describe it as "pills." Two of the "pills" were distinctive enough from the other pills in the bottle for the arresting officer to immediately identify them as crack cocaine. The appearance of the cocaine in *Freeman* simply was not a major concern in the case because the laboratory report conclusively established the chemical composition of the substance. Crack cocaine has a distinctive color, texture, and appearance. While it might be permissible, based upon these characteristics, for an officer to render a lay opinion as to crack cocaine, it cannot be permissible to render such an opinion as to a non-descript white powder.

## 2. Prejudicial Effect

Jennifer Mills only testified as to the similarity of the two packages of powder. Thus the admission of Detective Olmeda's and Whitesel's opinion testimony that the 55 grams of white powder was cocaine, over the objection of defendant, was not harmless error.

## III. Conclusion

Based upon the evidence presented in this case, there were no distinguishing characteristics of the 55 grams of white powder to support a lay opinion under Rule 701 that the substance was cocaine. Such opinions must be rationally based on the perception of the witness. N.C. Gen. Stat. § 8C-1, Rule 701 (2007). The mere "similarity" of the kilogram of white powder established by laboratory tests to be cocaine to the 55 grams is not sufficient to establish the 55 grams to be cocaine, a controlled substance. I would hold the trial court abused its discretion in allowing lay opinion testimony that the substance was in fact cocaine.

The trial court erred in allowing the lay opinion testimony of the officers that the 55 grams of white powder was cocaine to come before the jury. Without this testimony, there was no evidence before the jury as to the nature of the white powder. The trial court erred in

TROTTER v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[189 N.C. App. 655 (2008)]

denying defendant's motion to dismiss the Class G trafficking offense. I would reverse the judgment of the trial court in that case. Since defendant received the mandatory sentence on the Class F trafficking offense, it would be unnecessary to resentence defendant.