ELMORE, Judge.
In an apparent effort to avoid a license checkpoint and traffic stop, Jerry Lamont Lindsey (defendant) steered his vehicle down a dead-end road into a ravine. After defendant was apprehended, police found a white substance inside a pill bottle in defendant's pants pocket, and white powder inside twenty-three plastic corner bags in defendant's vehicle. The State's evidence tended to show that the pill bottle and corner bags contained cocaine base and cocaine hydrochloride, respectively.
The primary issue on appeal is whether the State established a chain of custody sufficient to admit the cocaine and the corresponding Crime Lab Report into evidence. Upon review for abuse of discretion, we hold that the evidence offered by the State was sufficient to establish the chain of custody and the trial court properly exercised its discretion to admit the cocaine and Crime Lab Report at trial. Because we address the merits of defendant's chain of custody argument, we need not consider his alternative claims for ineffective assistance of counsel. No error.
I. Background
On 10 January 2013, Deputy Tyler Gantt of the Burke County Sheriff's Office was operating a license checkpoint at an intersection in Glen Alpine. At approximately 1:50 a.m., Gantt observed defendant's 1998 Oldsmobile Cutlass turn onto a dead-end residential street just before the checkpoint. Gantt saw the vehicle appear two minutes later, turn right, and drive away from the intersection. Suspecting that defendant was avoiding the checkpoint, Gantt followed the vehicle as it pulled into a convenience store before turning back onto the main road.
As defendant proceeded toward the checkpoint a second time, he sped up and crossed the double-yellow line, prompting Gantt to activate his blue lights and siren. Defendant turned onto another dead-end road, drove across a homeowner's yard, and plummeted down a ravine into a tree. Gantt stopped his cruiser at the top of the ravine and positioned his spotlight on defendant's vehicle below. When he saw that the vehicle was empty, he radioed his supervisor, Lieutenant Dylan Anderson.
Anderson arrived at the scene, followed by a K-9 unit. The officers found defendant approximately seventy-five yards from his car, lying by a tree and bleeding profusely from head wounds. After placing defendant under arrest, Gantt searched defendant and found a pill bottle containing a suspicious off-white substance in his left front pocket. Gantt locked the pill bottle in the trunk of his patrol car before escorting defendant to the hospital. Gantt eventually placed the pill bottle into an evidence locker at the Burke County Sheriff's Office, in accordance with standard procedure.
While Gantt drove defendant to the hospital, Anderson searched defendant's vehicle and found a large plastic bag on the floorboard. Inside the large bag were twenty-three smaller corner bags, each containing white powder. Anderson locked the large plastic bag in his trunk until he delivered it to Gantt at the sheriff's office for placement into the evidence locker.
Tom Hester, an investigator with the Burke County Narcotics Task Force, testified that another investigator, Shane Trull, retrieved the items from the evidence locker, processed the items, and sent them to the SBI Crime Lab in Asheville. Hester noted that each item had identifying information on its packaging: "They have [ ] 'Shane Trull,' the investigator that seized this or got it from the evidence locker; his initials where he seized it; Item 1 and Item 2, for when we send a[n] inventory sheet to the SBI; and the date that he had-appears to initial it." Hester also testified that "according to the [Evidence Property Report], Shane Trull received the evidence that was packaged by Deputy Gantt."
The Crime Lab Report, dated 4 September 2014, indicates that two items were submitted by the Burke County Narcotics Task Force via first-class mail on 14 January 2013: "Item # 1: Sealed zip-lock plastic bag containing off-white material," and "Item # 2: Twenty-three (23) plastic bag corners each containing white powder." Three of the plastic corner bags were individually analyzed for controlled substances but no chemical analysis was performed on the other twenty. The results of the examination were included in the Crime Lab Report:
Item 1
Material containing Cocaine Base-Schedule II.
Net weight of material-4.44 (+/- 0.03) grams.
Item 2
Three plastic bag corners were individually analyzed and were each found to contain material containing Cocaine Hydrochloride-Schedule II.
Net weight of material-0.69 (+/- 0.05) gram.
Twenty (20) plastic bag corners-No chemical analysis.
Gross weight of contents and packaging-5.3 grams.
The Crime Lab Report also indicates that the evidence was returned via first-class mail to Trull, whose name is listed with the return address at the top of the report.
According to the Evidence Property Report, the evidence was received at the Burke County Sheriff's Office on 26 September 2014 by Frances Curry.[1] The same NCSBI Crime Lab number appears on both the Evidence Property Report and the Crime Lab Report. In addition, the description of the evidence in the Evidence Property Report exactly matches that from the Crime Lab Report, except for the omission of "Twenty (20) plastic bag corners-No chemical analysis." The written chain of custody in the Evidence Property Report shows that the evidence was released by Curry to Sergeant Dean Lloyd for evidence storage on 26 September 2014. Lloyd then released the evidence to Hester for defendant's trial on 16 November 2015.
At trial, Gantt identified State's Exhibit 1 as the off-white substance from the pill bottle found in defendant's pants pocket. Anderson identified State's Exhibit 2 as three of the small plastic corner bags from the large plastic bag found in defendant's vehicle. Hester identified State's Exhibit 3 as the Crime Lab Report which was attached to the envelope containing Exhibits 1 and 2.
Defendant objected to the admissibility of Exhibits 1 and 2 on the basis of insufficient chain of custody. After voir dire , the trial court admitted Exhibits 1 and 2 but required the State to lay further foundation:
THE COURT: I do think, Counsel, that in view of the September 4th written notice, that you've waived chain of custody objections. However, you [the prosecutor] still have to lay a foundation.
MR. BACK: Yes, sir, and I will be happy to.
THE COURT: Go ahead, sir.
MR. CLONTZ: Well, I don't object to the laboratory report, report in the absence of Michael Cruz-Quiones-
MR. BACK: (Inaudible)-
MR. CLONTZ: -who did the report. I, I can't now. But the-
THE COURT: I understand.
MR. CLONTZ: -chain of custody of it, there's missing evidence from missing parties or a gap. That's what I'm objecting to.
THE COURT: All right, overruled with the proviso that when the jury gets back here you'll have to lay more of a foundation.
MR. BACK: Yes, sir, absolutely.
To the satisfaction of the trial court, the State proceeded to establish the chain of custody through Hester's testimony, the Evidence Property Report, and the Crime Lab Report. Over defendant's objection, the trial court admitted the Crime Lab Report into evidence as Exhibit 3 and published it to the jury.
Defendant was convicted for possession of drug paraphernalia in violation of N.C. Gen. Stat. § 90-113.22(a) ; possession with intent to manufacture, sell, or deliver cocaine in violation of N.C. Gen. Stat. § 90-95(a)(1) ; and attaining habitual felon status under N.C. Gen. Stat. § 14-7.1. Defendant timely appeals.
II. Discussion
On appeal, defendant argues that the trial court erred in admitting Exhibits 1 and 2 into evidence at trial because the State failed to establish a sufficient chain of custody. If Exhibits 1 and 2 had been properly excluded, defendant contends, then Exhibit 3 would have been irrelevant and inadmissible. We disagree.
"The standard of review for admission of evidence over objection is whether it was admissible as a matter of law, and if so, whether the trial court abused its discretion in admitting the evidence." State v. Bodden , 190 N.C. App. 505, 512, 661 S.E.2d 23, 27 (2008) (citing State v. Bell , 164 N.C. App. 83, 88, 594 S.E.2d 824, 827 (2004) ). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis , 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citing State v. Parker , 315 N.C. 249, 337 S.E.2d 497 (1985) ).
Real evidence of cocaine is admissible in a criminal trial if the proponent properly authenticates the evidence. See N.C. Gen. Stat. § 8C-1, Rule 901(a) (2015) (requiring authentication as a prerequisite for admissibility); State v. Campbell , 311 N.C. 386, 388, 317 S.E.2d 391, 392 (1984). A chain of custody may establish that the evidence is what it purports to be and has not been materially altered. See Campbell , 311 N.C. at 388-89, 317 S.E.2d at 392. The level of certainty required for authentication is within the trial court's discretion. Id. ; State v. Smith , 134 N.C. App. 123, 125-26, 516 S.E.2d 902, 905 (1999) ; State v. Stinnett , 129 N.C. App. 192, 198, 497 S.E.2d 696, 700, disc. review denied , 348 N.C. 508, 510 S.E.2d 669, cert. denied , 525 U.S. 1008 (1998) ). "[A]ny weak links in a chain of custody relate only to the weight to be given evidence and not to its admissibility." Campbell , 311 N.C. at 389, 317 S.E.2d at 392 (citations omitted).
N.C. Gen. Stat. § 90-95(g1) provides one method to establish chain of custody through a self-authenticating written statement. If "each successive person in the chain of custody" signs the written statement, indicating that one person delivered the evidence to the other on the date provided, the statement constitutes "prima facie evidence that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement." N.C. Gen. Stat. § 90-95(g1)(1) (2015) ; see also N.C. Gen. Stat. § 8C-1, Rule 901(b)(10) (2015) (permitting authentication through statutory procedure). The statement must "contain a sufficient description of the material or its container so as to distinguish it as the particular item in question and shall state that the material was delivered in essentially the same condition as received." N.C. Gen. Stat. § 90-95(g1)(2) (2015).
Section 90-95(g1), however, "does not dictate the only proper method of proving the chain of custody when not all persons in the chain are called to testify." State v.Greenlee , 146 N.C. App. 729, 732, 553 S.E.2d 916, 918 (2001). A written statement combined with oral testimony may establish a chain of custody sufficient to authenticate real evidence at trial. In State v. Lorenzo , 147 N.C. App. 728, 556 S.E.2d 625 (2001), for example, the State initially offered an incomplete written statement of the chain of custody for marijuana seized from the defendant. Id. at 733, 556 S.E.2d at 628. One officer failed to sign the written statement but testified at trial. Id. Although the written statement itself did not comply with section 90-95(g1), this Court held that the "testimony, in addition to the statement submitted by the State, was sufficient to establish the chain of custody." Id. Similarly, in Greenlee the State successfully established a chain of custody for evidence of cocaine through a combination of a written statement and officer testimony. 146 N.C. App. at 731-32, 553 S.E.2d at 917-18. This Court rejected the defendant's argument that every single person within the chain of custody must testify in court if the written statement is incomplete. Id. at 731, 553 S.E.2d at 918.
In this case, the State did not rely exclusively on the Evidence Property Report to establish the chain of custody. Instead, as in Lorenzo and Greenlee , the State offered other evidence to show that Exhibits 1 and 2 were what they purported to be and had not been materially altered. Testimony from Gantt and Anderson narrated the initial seizure of the evidence and its placement into the evidence locker at the Burke County Sheriff's Office. Referencing the Evidence Property Report and the identifying information on State's Exhibits 1 and 2, Hester testified that Trull processed the evidence at the sheriff's office and mailed it to the SBI Crime Lab. Exhibit 3, the Crime Lab Report, shows the receipt, analysis, and disposition of the evidence by the SBI Crime Lab. The Evidence Property Report accounts for the chain of custody thereafter, from the time it was received at the Burke County Sheriff's Office from the SBI Crime Lab until it was released for defendant's trial.
Although Trull did not sign the chain of custody statement and did not testify at trial, Hester corroborated Trull's participation in the chain of custody to satisfy the trial court's request for further foundation. Any weak links in the chain of custody were "properly considered by the jury in weighing the reliability of the evidence," not its admissibility. Smith , 134 N.C. App. at 126, 516 S.E.2d at 905 ; see Greenlee , 146 N.C. App. at 732, 553 S.E.2d at 918 ("If there are weak links in the chain of custody, ... these links relate to the weight of the evidence, not its admissibility." (citation omitted)). Because the State established a chain of custody sufficient to admit the evidence analyzed in the Crime Lab Report, the report itself was also properly admitted as Exhibit 3.
III. Conclusion
The trial court did not abuse its discretion in admitting the State's Exhibits 1, 2, and 3 into evidence at trial because the State established a sufficient chain of custody. Because we addressed the merits of defendant's principal argument, we need not consider his alternative claim for ineffective assistance of counsel.
NO ERROR.
Report per Rule 30(e).
Judges DILLON and ZACHARY concur.

At trial, Hester testified that Trull was no longer employed as an investigator with the Burke County Sheriff's Office. It is not clear from the record whether he was still working in that capacity when the evidence was received from the SBI Crime Lab.