STATE OF NORTH CAROLINA v. ELIJAH OMAR NABORS

No. COA10-176

(Filed 19 October 2010)

**Drugs— possession of cocaine—sale of cocaine—insufficient evidence that substance was cocaine—lay opinion testimony**

The trial court erred in denying defendant's motion to dismiss the charges of possession with intent to sell and deliver cocaine and sale of cocaine where the sole evidence that the substance that formed the basis of the charges was cocaine consisted of lay

opinion testimony from the charging police officer and an undercover informant based on their visual observation of the substance. Because the evidence required to establish that the substance at issue was in fact a controlled substance must have been expert witness testimony based on a scientifically valid chemical analysis and not mere visual inspection, the evidence was insufficient to establish that the substance at issue was cocaine.

Appeal by Defendant from judgment entered 25 August 2009 by Judge W. Russell Duke, Jr. in Harnett County Superior Court. Heard in the Court of Appeals 2 September 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Amy Bircher, for the State.*

*Jesse W. Jones for Defendant.*

STEPHENS, Judge.

The dispositive issue in this case is whether the trial court erred in denying Defendant's motion to dismiss the charges of possession with intent to sell and deliver cocaine and sale of cocaine when the sole evidence that the substance that formed the basis of the charges was cocaine consisted of lay opinion testimony from the charging police officer and an undercover informant based on their visual observation of the substance. Because the evidence required to establish that the substance at issue was in fact a controlled substance must have been expert witness testimony "based on a scientifically valid chemical analysis and not mere visual inspection[,]" *State v. Ward*, 364 N.C. 133, 142, 694 S.E.2d 738, 744 (2010), the evidence was insufficient to establish that the substance at issue was cocaine. Accordingly, the trial court erred in denying Defendant's motion to dismiss the charges. We thus vacate Defendant's convictions.

*I. Procedural History*

On 23 May 2008, Defendant Elijah Omar Nabors was charged with one count of possession with intent to sell and deliver cocaine and one count of sale of cocaine. On 9 March 2009, Defendant was indicted on both counts as well as having attained habitual felon status. Defendant was tried before a jury on 24 and 25 April 2009. The jury returned verdicts finding Defendant guilty of the cocaine charges, and Defendant pled guilty to having attained habitual felon status. Defendant was sentenced to a term of 96 to 125 months in prison. Defendant appeals.

**STATE v. NABORS**

[207 N.C. App. 463 (2010)]

## II. Factual Background

The State's evidence tended to show the following: On 22 May 2008, Officer Joseph Byrd of the Narcotics Division of the City of Dunn Police Department charged Christopher Gendreau with possession of cocaine. After being charged, Mr. Gendreau offered to act as an informant for the Dunn Police Department to "help himself out" with the charges.

On 23 May 2008, Mr. Gendreau set up an undercover purchase of cocaine by calling Defendant on the telephone and telling him that Mr. Gendreau needed to buy some cocaine from Defendant. Mr. Gendreau and Defendant agreed to meet at the Liberty gas station in Dunn. Officer Byrd positioned himself in the parking lot across the street from the Liberty gas station and observed Defendant's vehicle pull into the Liberty parking lot. Mr. Gendreau approached the passenger side of Defendant's car. Defendant told Mr. Gendreau that the cocaine was on the passenger door. Mr. Gendreau retrieved the alleged cocaine from the armrest of the passenger door and handed Defendant $80 in marked 20-dollar bills.

Mr. Gendreau then gave the agreed-upon signal—removing his hat and scratching his head—to indicate to Officer Byrd that the purchase had been made. Officer Byrd called his supervisor, Lieutenant Jimmy Page, and Sergeant Dallas Autrey. Mr. Gendreau walked to the designated meeting location and turned the substance over to Sergeant Autry. Lieutenant Page stopped Defendant's car. Defendant was driving and Quinton Smith was in the passenger seat. Lieutenant Page retrieved the $80 in marked bills from Defendant and showed Defendant a photocopy of the money to confirm with Defendant that the money was from the Dunn Police Department.

At trial, Officer Byrd identified the substance purchased by Mr. Gendreau, State's Exhibit 2, as crack cocaine. Mr. Gandreau testified that Defendant sold him "cocaine" in the Liberty gas station parking lot. Officer Byrd acknowledged that the substance had been analyzed by the North Carolina State Bureau of Investigation ("SBI") for proper identification and weight. However, the analyst who performed the analysis did not testify at trial.

Defendant called Quinton Smith to testify on Defendant's behalf. Mr. Smith testified that he, not Defendant, sold Mr. Gendreau cocaine at the Liberty gas station. On cross-examination, the State questioned Mr. Smith about his prior written statement which indicated that Defendant had sold cocaine to Mr. Gendreau.

### III. Discussion

By Defendant's third argument, Defendant contends that the trial court erred by failing to dismiss the charges of possession with intent to sell and deliver cocaine and sale of cocaine for insufficient evidence that the substance Defendant sold to Mr. Gendreau was cocaine. We agree.

In a criminal case, the State must prove every element of a criminal offense beyond a reasonable doubt. *State v. Billinger*, 9 N.C. App. 573, 575, 176 S.E.2d 901, 903 (1970). Thus, in a controlled-substance case, "[t]he burden is on the State to establish the identity of any alleged controlled substance that is the basis of the prosecution." *Ward*, 364 N.C. at 147, 694 S.E.2d at 747. When a defendant challenges the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Dorton*, 172 N.C. App. 759, 770, 617 S.E.2d 97, 105 (citations and quotation marks omitted), *disc. review denied*, 360 N.C. 69, 623 S.E.2d 775 (2005).

In *State v. Freeman*, 185 N.C. App. 408, 648 S.E.2d 876 (2007), *appeal dismissed*, 362 N.C. 178, 657 S.E.2d 663, *petition for cert. dismissed*, —— N.C. ——, 663 S.E.2d 429 (2008), defendant challenged the admission of lay opinion testimony from a police officer that the substance that formed the basis of the charge of possession of cocaine was crack cocaine. Police arrested defendant, an armed robbery suspect, who had in his possession what "looked like a pill bottle." *Id.* at 411, 648 S.E.2d at 879. The officer testified that "two of the pills in the pill bottle . . . were crack cocaine[.]" *Id.* at 414, 648 S.E.2d at 882. The officer's identification of the pills as crack cocaine was based solely upon the officer's visual examination of the pills and his "extensive training and experience in the field of narcotics." *Id.*[1] The two pills were tested by the Charlotte-Mecklenburg Police Crime Laboratory and the analyst who conducted the chemical analysis testified that the substances were cocaine, having a combined weight of .22 grams. *Id.* at 411, 416, 648 S.E.2d at 880, 882.

Defendant argued on appeal that the trial court committed plain error by allowing the officer to testify that the two pills seized were crack cocaine. *Id.* at 414, 648 S.E.2d at 881. In light of the analyst's tes-

---

1. The officer testified that he had been with the police department for eight years at the time and had come into contact with crack cocaine between 500 and 1000 times. *Id.*

timony confirming through a chemical analysis that the substance was cocaine, the admission of the officer's statement was clearly not plain error. However, this Court went on to hold that it was permissible under Rule 701 of the North Carolina Rules of Evidence for the officer to render an opinion that the substance was crack cocaine. *Id.* at 414-15, 648 S.E.2d at 882.[2]

In *State v. Llamas-Hernandez*, 189 N.C. App. 640, 659 S.E.2d 79 (2008) (Steelman, J., concurring in part and dissenting in part), *rev'd and dissent adopted*, 363 N.C. 8, 673 S.E.2d 658 (2009), defendant challenged the admission of lay opinion testimony from two detectives that the substance which formed the basis of the prosecution was powder cocaine. A divided panel of this Court upheld the trial court's decision in reliance on *Freeman. Llamas-Hernandez*, 189 N.C. App. 640, 659 S.E.2d 79. However, after admitting that "the holding in *Freeman* concerns us[,]" the majority felt "bound to follow it." *Id.* at 647, 659 S.E.2d at 83. Judge Steelman dissented in part, noting that "[t]he appearance of the cocaine in *Freeman* simply was not a major concern in the case because the laboratory report conclusively established the chemical composition of the substance." *Id.* at 654, 659 S.E.2d at 87 (Steelman, J., dissenting). Judge Steelman distinguished *Freeman* on the basis that unlike powder cocaine, crack cocaine "has a distinctive color, texture, and appearance." *Id.* Thus, Judge Steelman opined that "[w]hile it *might* be permissible, based upon these characteristics, for an officer to render a lay opinion as to crack cocaine, it cannot be permissible to render such an opinion as to a non-descript white powder." *Id.*

The dissent further noted that the General Assembly had adopted "a technical, scientific definition of cocaine[.]" *Id.* at 652, 659 S.E.2d at 86. By doing so, "it is clear that the General Assembly intended that expert testimony be required to establish that a substance is in fact a controlled substance." *Id.* Judge Steelman further reasoned that, given the technical definition of a controlled substance and the existence of

---

2. In so holding, this Court relied solely on *State v. Bunch*, 104 N.C. App. 106, 408 S.E.2d 191 (1991). *Bunch* held that an officer, based upon his experience, can testify as to common practices of drug dealers. *Id.* at 110, 408 S.E.2d at 194. The testimony dealt with the practice that one person in a drug deal holds the money, and another holds the drugs. *Id.* This testimony dealing with custom and practice in drug deals is not the same as an officer testifying as to the chemical composition of a purported controlled substance under Chapter 90 of the General Statutes. In light of our Supreme Court's holding in *State v. Ward*, *supra*, we believe that *Bunch* in no way supports the holding of *Freeman* that an officer can give a lay opinion that a substance is cocaine. Furthermore, in light of *State v. Ward*, the continued viability of the *State v. Freeman* holding is in doubt.

statutory procedures for the admission of laboratory reports and the discovery of both those reports and underlying materials, the General Assembly never "intended . . . that an officer could make a visual identification of a controlled substance[.]" *Id.* at 653, 659 S.E.2d at 87. Our Supreme Court reversed this Court's decision in *Llamas-Hernandez* and adopted Judge Steelman's dissent without further comment. *Llamas-Hernandez*, 363 N.C. 8, 673 S.E.2d 658.

Recently in *Ward*, our Supreme Court held that an expert witness's visual identification of an alleged controlled substance "is not sufficiently reliable for criminal prosecutions" and thus, "[u]nless the State establishes before the trial court that another method of identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt, some form of scientifically valid chemical analysis is *required.*" *Ward*, 364 N.C. at 147, 694 S.E.2d at 747 (emphasis added).

In *Ward*, the State presented expert witness testimony that pills found on defendant's person, in his vehicle, and at his residence were pharmaceuticals classified as controlled substances under the North Carolina Controlled Substances Act. *Id.* at 134, 694 S.E.2d at 739. Special Agent Irvin Lee Allcox, a chemist in the Drug Chemistry Section of the SBI crime laboratory who had worked more than 34 years for the SBI, including the most recent 24 years as a chemist in the SBI crime laboratory, was qualified and testified as an expert in the chemical analysis of drugs and forensic chemistry.[3] Special Agent Allcox testified that of the sixteen collections of pills the SBI received for examination in the case, he conducted a chemical analysis on " 'about half of them.' " *Id.* at 136, 694 S.E.2d at 740. "The remaining tablets were identified solely by visual inspection and comparison with information provided by Micromedex literature, which Special Agent Allcox described as a 'medical publication that is used by the doctors in hospitals and pharmacies to identify prescription medicine.' " *Id.* (footnote omitted). Special Agent Allcox further testified that "through 'a listing of all the pharmaceutical markings,' Micromedex can help 'identify the contents, the manufacturer and the type of substances in the tablets.' " *Id.* at 136-37, 694 S.E.2d at 740.

---

3. Our Supreme Court specifically noted, "Special Agent Allcox's credentials are not disputed; he appears to be eminently qualified as an expert witness in forensic chemistry. He has worked over thirty-four years with the SBI, including twenty-four years as a forensic chemist, and he handles pharmaceuticals on nearly a daily basis. The prosecutor at trial referred to him as 'supremely qualified.' " *Id.* at 145, 694 S.E.2d at 746.

The trial court admitted Special Agent Allcox's testimony regarding. the substances on which he conducted a chemical analysis. Furthermore, over defendant's objections, the trial court also admitted Special Agent Allcox's testimony regarding the substances which he identified merely by visual inspection and reference to the Micromedex literature. In affirming this Court's opinion,[4] the Supreme Court stated that "[t]he natural next step following our decision to adopt the reasoning of the dissenting judge in *Llamas-Hernandez* is to conclude here that the expert witness testimony required to establish that the substances introduced here are in fact controlled substances must be based on a scientifically valid chemical analysis and not mere visual inspection." *Ward*, 364 N.C. at 142, 694 S.E.2d at 744. The Court thus concluded that "the trial court abused its discretion by permitting Special Agent Allcox to identify certain evidence as controlled substances based merely on visual inspection as a method of proof." *Id.* at 148, 694 S.E.2d at 747-48.

The Court found support for its holding in (1) the precedent set by *Llamas-Hernandez*;[5] (2) enactments of the General Assembly prohibiting the manufacture, sale, delivery, or possession of controlled substances, "provide very technical and 'specific chemical designation[s]' " for controlled substances, and also prohibit the creation, sale, delivery, or possession of counterfeit controlled substances, *id.* at 143, 694 S.E.2d at 744; and (3) Special Agent Allcox's own testimony which was "lacking in sufficient credible indicators to support the reliability of his visual inspection methodology." *Id.* at 144, 694 S.E.2d at 745.

In this case, Officer Byrd testified that he had been a sworn law enforcement officer for "[a]pproximately three years" and had received specialized training in narcotics investigation consisting of a "basic narcotic investigation class [which] include[d] investigations of packaging,

---

4. This Court held that "the trial court erred . . . by admitting testimony by Special Agent Allcox identifying certain items as controlled substances on the basis of a visual identification process." *State v. Ward,* — N.C. App. —, —, 681 S.E.2d 354, 373 (2009).

5. The Court also noted that although not binding precedent, other jurisdictions have reached similar conclusions. *Id.* at 142 n.4, 694 S.E.2d at 744 n.4 (citing *People v. Mocaby*, 882 N.E.2d 1162, 1167 (Ill. App. Ct. 5th Dist. 2008) (holding that expert witness testimony identifying tablets as containing controlled substances based on comparing them "to pictures in a book" amounted to "conjecture" and "speculat[ion]" and was not a "conclusive scientific analysis" on which the prosecution could rely to carry its burden of proof); *State v. Colquitt*, 137 P.3d 892, 894 (Wash. Ct. App. 2006) (overturning a conviction when the prosecutor offered as evidence that a law enforcement officer believed the substance at issue was cocaine and conducted a field test that was never verified by further laboratory testing)).

sale, and distribution of [controlled substance] products." When asked by the prosecutor to identify State's exhibit number 2, Officer Byrd responded, "It's crack cocaine."

Mr. Gendreau acknowledged that he had "personal experience with drug use" in that he used crack cocaine for "about two-and-a-half years, on and off" between " '07 and '08." When asked by the prosecutor what he received from Defendant, Mr. Gendreau testified, "[a] white, rock-like substance that I knew to be crack cocaine." After Officer Byrd and Mr. Gendreau's testimony, the jury recessed for afternoon break. The following exchange then took place between the prosecutor, Ms. Matthews, and the trial court:

> MS. MATTHEWS: Your Honor, with regard to scheduling, we have called the SBI. They are aware that things are proceeding faster than I initially expected. I've been told by my office that they need approximate[ly] two hours to get here today. I can call and confirm that, but that's what I've been told by my office.
>
> THE COURT: That's too bad.
>
> MS. MATTHEWS: I would ask for an opportunity to, hopefully, get them here.
>
> THE COURT: Well, I told you at 1:30 they were supposed to be here.
>
> MS. MATTHEWS: Well, that's when they called. It's just that I'm not sure that - - - -
>
> THE COURT: Well, at 3:30, they should have been here.
>
> MS. MATTHEWS: I would hope so, but I'm not a hundred percent sure that that's the case.
>
> THE COURT: Well, your controlled substance is already in and has been identified as crack cocaine without objection. So I'm not going to wait two hours. You can call them and tell them that.
>
> MS. MATTHEWS: That's fine.

The State ultimately rested its case without calling the SBI analyst to the witness stand.

Neither Officer Byrd nor Mr. Gendreau was qualified or testified as an expert in the chemical analysis of drugs, forensic chemistry, or another related field. Accordingly, their opinion testimony as to the identity of the substance at issue was insufficient to establish that the

substance introduced here was in fact a controlled substance. *See id.* at 142, 694 S.E.2d at 744. ("[T]he expert witness testimony required to establish that the substances introduced here are in fact controlled substances must be based on a scientifically valid chemical analysis and not mere visual inspection."); *Llamas Hernandez*, 189 N.C. App. at 652, 659 S.E.2d at 86 (Steelman, J., dissenting) ("By enacting such a technical, scientific definition of cocaine, . . . it is clear that the General Assembly intended that expert testimony be required to establish that a substance is in fact a controlled substance.").

Furthermore, neither Officer Byrd's nor Mr. Gendreau's testimony was "based on a scientifically valid chemical analysis and not mere visual inspection." *Ward*, 364 N.C. at 142, 694 S.E.2d at 744. There is no indication that Officer Byrd or Mr. Gendreau did anything more than engage in conjecture that the substance purchased from Defendant was cocaine based on their previous encounters with cocaine and their visual observation of the substance in this case.

While *Llamas-Hernandez* contemplated that "it *might* be permissible" for an officer to *render* a lay opinion as to whether a substance is crack cocaine based on crack cocaine's "distinctive color, texture, and appearance[,]" *Llamas-Hernandez*, 189 N.C. App. at 654, 659 S.E.2d at 87 (Steelman, J., dissenting), mere lay opinion that a substance is a controlled substance based solely on its physical appearance is insufficient evidence from which a jury could find beyond a reasonable doubt that the substance is, in fact, controlled.

Indeed, as noted in *Ward*, the legislature has acknowledged the existence of counterfeit controlled substances by imposing liability for actions related to counterfeit controlled substances, *see* N.C. Gen. Stat. § 90-95(a)(2) (2009) (making it unlawful to "create, sell or deliver, or possess with intent to sell or deliver, a counterfeit controlled substance"), and has clearly contemplated that the physical appearance of a counterfeit controlled substance would be "substantially identical to a specified controlled substance." N.C. Gen. Stat. § 90-87(6)(b)(3) (2009) (statutory definition of counterfeit controlled substance which designates three factors that collectively indicate evidence of an intent to misrepresent a controlled substance).

Moreover, "by providing 'procedures for the admissibility of [] laboratory reports' and 'enacting such a technical, scientific definition of cocaine, it is clear that the General Assembly intended that expert testimony be required to establish that a substance is in fact a controlled substance.' " *Ward*, 364 N.C. at 142, 694 S.E.2d at 744 (quoting

*Llamas-Hernandez*, 189 N.C. App. at 652, 659 S.E.2d at 86-87 (Steelman, J., dissenting) (citations omitted). " '[I]f it was intended by the General Assembly that an officer could make a visual identification of a controlled substance, then such provisions in the statutes would be unnecessary.' " *Id.* (quoting *Llamas-Hernandez*, 189 N.C. App. at 653, 659 S.E.2d at 87 (Steelman, J., dissenting)).

As Special Agent Allcox's method of visual inspection of the pills and comparison of their physical appearance with information provided by Micromedex literature was insufficiently reliable under N.C. Gen. Stat. § 8C-1, Rule 702 to support Special Agent Allcox's expert opinion as to the identity of the substances at issue in *Ward*, Officer Byrd's and Mr. Gendreau's conjecture based on their previous encounters with cocaine and their observation of the substance here was surely not the "scientifically valid chemical analysis" of the substance required "to establish the identity of the controlled substance beyond a reasonable doubt[.]" *Id.* at 147, 694 S.E.2d at 747.

Accordingly, there was insufficient evidence that the substance that formed the basis of the controlled substance charges in this case was cocaine, and the trial court thus erred in denying Defendant's motion to dismiss those charges. Defendant's convictions on those charges are vacated. As a result, Defendant's conviction as an habitual felon is also vacated. *See State v. Smith*, 186 N.C. App. 57, 67, 650 S.E.2d 29, 36 (2007) (vacating judgment under which defendant was sentenced as a habitual felon because new trial ordered as to defendant's underlying felony charge); *see also State v. Allen*, 292 N.C. 431, 433-34, 233 S.E.2d 585, 587 (1977) ("[T]he proceeding by which the state seeks to establish that defendant is an habitual felon is necessarily ancillary to a pending prosecution for the 'principal,' or substantive, felony.").

In light of our conclusions, we need not address Defendant's remaining assignments of error.

VACATED.

Judges ELMORE and JACKSON concur.