STATE OF NORTH CAROLINA v. ELIJAH OMAR NABORS

No. 479PA10

(Filed 9 December 2011)

**1. Drugs— possession with intent to sell and deliver cocaine—sale of cocaine—testimony of defendant's witness—sufficient evidence—substance cocaine**

The trial court did not err by denying defendant's motion to dismiss charges of possession with intent to sell and deliver cocaine and sale of cocaine for insufficient evidence. When a defense witness's testimony characterizes a putative controlled substance as a controlled substance, the defendant cannot on appeal escape the consequences of the testimony in arguing that his motion to dismiss should have been allowed. The testimony of defendant's witness, which identified as cocaine the items sold to an undercover operative, provided evidence of a controlled substance sufficient to withstand defendant's motion to dismiss. Furthermore, assuming *arguendo* that the trial court erroneously admitted lay testimony offered by the State that the substance sold was cocaine, defendant could not show plain error inasmuch as his own evidence established that the substance was cocaine.

**2. Evidence— trial court's question—witness's drug activi-
ties—response not prejudicial**

Defendant's contention that the trial court erred by question-
ing a witness concerning his drug activities was overruled.
Assuming, without deciding, that the question was improper,
defendant could not show prejudice as the witness had already
testified without objection that he had used cocaine, had been
arrested for possession of cocaine, and had telephoned defend-
ant to set up the drug buy.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unani-
mous decision of the Court of Appeals, —— N.C. App. ——, 700 S.E.2d
153 (2010), finding error in a judgment entered on 25 August 2009 by
Judge W. Russell Duke, Jr. in Superior Court, Harnett County, and
vacating defendant's convictions. Heard in the Supreme Court on 7
September 2011.

*Roy Cooper, Attorney General, by Charles E. Reece and
Kathleen N. Bolton, Assistant Attorneys General, for the State-
appellant.*

*Jesse W. Jones for defendant-appellee.*

PARKER, Chief Justice.

The issue in this case is whether the Court of Appeals erred in
reversing the trial court's denial of defendant's motion to dismiss at
the close of all evidence. For the reasons stated herein, we reverse
the decision of the Court of Appeals.

Defendant was arrested following an undercover drug transac-
tion at a convenience store parking lot in Dunn, North Carolina.
Subsequently, defendant was indicted for one count each of posses-
sion with intent to sell and deliver cocaine and sale of cocaine and for
being an habitual felon. Defendant was convicted of both cocaine
charges and pled guilty to habitual felon status. The trial court
entered judgment sentencing defendant in the presumptive range
to imprisonment for a minimum term of 96 months and a maximum
term of 125 months. Defendant gave timely notice of appeal to the
Court of Appeals.

At trial the State's evidence tended to show the following.
Christopher Gendreau (Gendreau), who had been charged with pos-
session of cocaine, volunteered to assist police by acting as the buyer

STATE v. NABORS

[365 N.C. 306 (2011)]

in an undercover cocaine purchase from defendant, with whom Gendreau was familiar. From inside a police vehicle, Gendreau telephoned defendant and said he needed to buy something from defendant. The two agreed to meet at a Liberty gas station in Dunn to complete the transaction. Police officers positioned themselves near the gas station to observe Gendreau make the purchase or to be prepared to intercept defendant thereafter. When defendant pulled into the Liberty parking lot, he was driving an Oldsmobile; and another person, later identified as Quinton Smith (Smith), was sitting in the passenger seat. Gendreau approached the passenger side of the vehicle, and defendant told him to retrieve the drugs from the armrest panel inside the passenger door. Gendreau then handed eighty dollars in pre-marked bills to defendant. After completing the transaction, Gendreau gave the officers the "take-down" signal. The officers stopped defendant's vehicle and, after arresting him, found the marked bills and a large amount of other cash on defendant's person. Officers also arrested Smith, who was later charged with possession of marijuana.

Gendreau testified that the substance he purchased from defendant was "[a] white, rock-like substance that [he] knew to be crack cocaine," a substance with which he had personal experience as a drug user during the two and one-half years preceding these events. Agent Joseph Byrd (Byrd), a three-year officer with specialized training in narcotics investigation who was part of the take-down team, testified that the substance collected from Gendreau immediately following the purchase was crack cocaine. Byrd also testified that this substance had been analyzed by the North Carolina State Bureau of Investigation to determine its identification and weight. Defendant did not object to this or any other testimony.

During defendant's case in chief, defense counsel called Smith to testify on defendant's behalf. The trial court conducted a voir dire in which the court questioned Smith regarding a statement he had previously signed incriminating defendant and inquired whether Smith understood the implications of changing his story on the witness stand. Smith confirmed that he intended to recant his previous statement and explained, "I just don't want to see nobody go to jail for something I did." On direct examination the thrust of Smith's testimony was that he, not defendant, arranged and executed the cocaine sale, as evidenced by the following testimony:

Q. And do you recall being at the Liberty gas station or convenience store?

A. Yes, sir.

Q. And your reason for being there was what?

A. To see Chris [Gendreau].

. . . .

Q. And what was your purpose for seeing Chris?

A. He had wanted some cocaine.

Q. Did you have cocaine?

A. Yes, sir.

. . . .

Q. Who had possession of the drugs when Chris took delivery of the cocaine?

A. I had it.

Q. Who had it?

A. I did. Oh, he—I had put it on the door panel.

Q. The what?

A. The door panel. Like on the door panel, he had reached in and got it from there.

. . . .

Q. Did you get the drugs from [defendant]?

A. Oh, no, sir.

Q. So you had those with you?

A. Yes, sir.

. . . .

Q. And which side of the car did Chris some [sic] to?

A. Passenger side.

Q. And what—was [defendant] in the vehicle at that time?

A. No, sir. He was in the store paying for the gas and getting me a pack of cigarettes.

Q. And who took possession of the money?

A. I did.

Q. And what did you do with the money?

A. I had—I had—really, I had owed [defendant] $100, and I had $20 of it on me, which I gave him that as soon as I got in the car. So I told him I was going to pay him the rest of the money when I get it, and which, when I got it, I finished paying him.

. . . .

Q. Did, at any time, [defendant] have any cocaine in his possession?

A. No, sir. I didn't see any. I had it.

Smith also testified that he had been the driver of the car during the drug sale and that because he did not want to get caught driving without a license, he and defendant had changed seats shortly after leaving the gas station.

On cross examination the prosecutor confronted Smith with the handwritten statement he had signed shortly after being arrested, and Smith admitted having made it. His statement contained the following narrative:

[Defendant] said he needed to go to Liberty for a minute because he needed to stop by there for some money and gas. As we pulled in the gas station, we went on the side of the store to meet somebody. So [defendant] said, "Get the dope, Chris. It's on the door panel." So he did, and Chris gave him [defendant] the $80.

(Quotation marks omitted.) During the State's rebuttal the trial court admitted the statement into evidence, and it was published to the jury. The State also reexamined Sergeant Dallas Autry, who testified that Smith, following his arrest, "admitted that . . . [defendant] was the one that passed the dope to the door panel and that [defendant] received the money from . . . Gendreau."

On appeal to the Court of Appeals, defendant argued that the trial court committed plain error by admitting into evidence Agent Byrd's testimony that the substance sold to Gendreau was "crack cocaine." Defendant also argued that the trial court erred in denying his motion to dismiss for insufficiency of the evidence, contending that "there was no properly admitted evidence which proved the existence of a

controlled substance or that [defendant] was ever in possession or control of any item which purported to be a controlled substance."

A unanimous panel of the Court of Appeals agreed. *State v. Nabors*, —— N.C. App. ——, ——, 700 S.E.2d 153, 159 (2010). Relying on this Court's opinion in *State v. Ward*, 364 N.C. 133, 142, 147, 694 S.E.2d 738, 744, 747 (2010), the court below concluded that in the absence of expert testimony as to the chemical analysis of the substance, the evidence was insufficient to prove an essential element of the crime, namely, that the substance was a controlled substance. *Nabors*, —— N.C. App. at ——, 700 S.E.2d at 159. In *Ward* this Court noted that the legislature had provided both procedures for the admissibility of laboratory reports and a technical definition of cocaine, and we stated, " '[I]f it was intended by the General Assembly that an officer could make a visual identification of a controlled substance, then such provisions in the statutes would be unnecessary.' " 364 N.C. at 142, 694 S.E.2d at 744 (quoting *State v. Llamas-Hernandez*, 189 N.C. App. 640, 653, 659 S.E.2d 79, 87 (2008) (Steelman, J., dissenting), *rev'd per curiam for reasons stated in dissent*, 363 N.C. 8, 673 S.E.2d 658 (2009)). The Court of Appeals reasoned that Byrd's and Gendreau's previous exposure to cocaine and their observation of the substance involved in this transaction did not equate to the "scientifically valid chemical analysis" necessary "to establish the identity of the controlled substance beyond a reasonable doubt." *Nabors*, —— N.C. App. at ——, 700 S.E.2d at 159 (brackets omitted) (quoting *Ward*, 364 N.C. at 147, 694 S.E.2d at 747) (internal quotation marks omitted). Given the State's lack of scientific proof, the Court of Appeals concluded "there was insufficient evidence that the substance that formed the basis of the controlled substance charges in this case was cocaine." *Id.* at ——, 700 S.E.2d at 158-59. The Court of Appeals reversed the trial court's denial of defendant's motion to dismiss and vacated defendant's convictions. *Id.* at ——, 700 S.E.2d at 159. This Court allowed the State's petition for discretionary review of the Court of Appeals' decision.

[1] Before this Court the State argues that the Court of Appeals erred in vacating defendant's convictions and dismissing the charges by (i) failing to address whether the trial court committed plain error in admitting the lay opinion testimony that the substance was crack cocaine and (ii) misapplying the standard for determining the sufficiency of the evidence to withstand a motion to dismiss. The State asserts that the Court of Appeals conflated defendant's sufficiency claim with his claim concerning admissibility of lay opinion testi-

mony. The State further argues that even if admission of the lay testimony identifying the substance as a controlled substance was error, defendant could not meet his burden of showing plain error in that defendant's own evidence demonstrated that the substance was cocaine.

In deciding a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, the trial court must determine whether "substantial evidence" has been presented "in support of each element of the charged offense." *State v. Chapman*, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005); *see also State v. McNeil*, 359 N.C. 800, 803-04, 617 S.E.2d 271, 273-74 (2005); *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). The evidence is to be considered "in the light most favorable to the State, giving the State the benefit of 'every reasonable inference to be drawn' " from that evidence. *State v. Denny*, 361 N.C. 662, 665, 652 S.E.2d 212, 213 (2007) (quoting and citing *State v. Lowery*, 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983)). "The defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Jones*, 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971). However, if the defendant's evidence is consistent with the State's evidence, then the defendant's evidence "may be used to explain or clarify that offered by the State." *Id.* (citing *State v. Sears*, 235 N.C. 623, 624, 70 S.E.2d 907, 908 (1952)). Moreover, both competent and incompetent evidence that is favorable to the State must be considered by the trial court in ruling on a defendant's motion to dismiss. *State v. Israel*, 353 N.C. 211, 216, 539 S.E.2d 633, 637 (2000).

In his briefs to the Court of Appeals and to this Court, defendant challenged the sufficiency of the evidence as to whether the substance sold was in fact a controlled substance, an essential element of the drug offenses for which he was convicted. *See* N.C.G.S. §§ 90-87(5), -90(1)(d), -95(a)(1) (2009). However, defendant did not raise this issue at trial. Rather his defense was that Smith, not defendant, orchestrated the drug transaction.

Defendant's witness Smith testified that Gendreau had told him on the telephone that he wanted to buy "cocaine," that Smith had brought "cocaine" with him to the Liberty gas station, and that what he sold to Gendreau was "cocaine." The obvious import of this testimony was not to contest the illicit nature of the merchandise but to persuade the jury that Smith, rather than defendant, was guilty of the drug crimes. Smith's testimony thus provided substantial evidence that the substance defendant sold to Gendreau was cocaine. *See*

*Garcia,* 358 N.C. at 412, 597 S.E.2d at 746 (defining substantial evidence as "relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion" (citations omitted)). Moreover, Smith's identification of the substance as cocaine was favorable to and did not conflict with evidence offered by the State; hence, the trial court could properly consider that testimony in ruling on defendant's motion to dismiss. *See Jones,* 280 N.C. at 66, 184 S.E.2d at 866. The trial court was not, however, required to consider Smith's claim that the drugs and the transaction were his, as that evidence was not consistent with the State's evidence. *See id.*

In sum, while the State has the burden of proving every element of the charge beyond a reasonable doubt, when a defense witness's testimony characterizes a putative controlled substance as a controlled substance, the defendant cannot on appeal escape the consequences of the testimony in arguing that his motion to dismiss should have been allowed. *See, e.g., State v. Morganherring,* 350 N.C. 701, 733-34, 517 S.E.2d 622, 641 (1999) (noting that the defendant's own evidence was sufficient to support an instruction on voluntary intoxication), *cert. denied,* 529 U.S. 1024, 146 L. Ed. 2d 322 (2000); *State v. House,* 340 N.C. 187, 198, 456 S.E.2d 292, 298 (1995) (concluding that the defendant's own evidence was sufficient to support an inference that he left the scene of his crime and took steps to avoid apprehension, thereby supporting an instruction on flight); *State v. Allen,* 279 N.C. 406, 412-13, 183 S.E.2d 680, 685 (1971) (holding that the defendant's own evidence was sufficient to establish that he was an adult for purposes of deciding defendant's motion to dismiss the charge of unlawfully dispensing a narcotic to a minor by an adult).

We hold, therefore, that the testimony of defendant's witness, which identified as cocaine the items sold to the undercover operative, provided evidence of a controlled substance sufficient to withstand defendant's motion to dismiss. In that this evidence is an independent basis for upholding the trial court's denial of the motion, we need not address whether the trial court erred in admitting Agent Byrd's and Gendreau's lay testimony that the substance was crack cocaine or whether the Court of Appeals correctly applied *Ward* and *Llamas-Hernandez* in its discussion of the State's lay opinion testimony regarding the nature of the controlled substance. Assuming arguendo that admission of the lay testimony was error, defendant cannot satisfy his burden of showing plain error inasmuch as his own evidence established that the substance sold was cocaine.

**[2]** Finally, we note that defendant argued in his brief to the Court of Appeals another issue that the Court of Appeals did not address. Rather than remanding to that court for consideration of the issue, we have reviewed defendant's argument that the trial court erred by questioning witness Gendreau concerning his drug activities and find no merit to defendant's contention. Specifically, the trial court asked Gendreau if he had ever bought drugs from defendant before, and Gendreau answered, "Yes." Assuming, without deciding, that the question was improper, defendant cannot show prejudice. Gendreau had already testified without objection that he had used cocaine, that he had been arrested for possession of cocaine, and that he had telephoned defendant to set up the drug buy. Without the trial judge's question, the jury could certainly infer from Gendreau's call to defendant that defendant was a supplier with whom Gendreau was familiar.

For the reasons stated herein, we reverse the decision of the Court of Appeals.

REVERSED.

Justice JACKSON did not participate in the consideration or decision of this case.