**STATE v. POOLE**

[223 N.C. App. 185 (2012)]

STATE OF NORTH CAROLINA v. EDWARD EUGENE POOLE, JR.

No. COA11-21-2

(Filed 16 October 2012)

**1. Constitutional Law—right to confrontation—nontestifying analyst's lab report—possession of controlled substance in local confinement facility—no plain error**

The trial court did not commit plain error by erroneously admitting a lab report and an agent's testimony identifying an exhibit as cocaine based on a nontestifying analyst's report. Because defendant was charged only with having been in possession of a controlled substance in a local confinement facility, defendant's own statement that he had "a piece of dope" established that the substance was a controlled substance.

**2. Constitutional Law—effective assistance of counsel—claim dismissed without prejudice**

Defendant's claim of ineffective assistance of counsel was dismissed without prejudice to his ability to file a motion for appropriate relief in the trial court.

Appeal by Defendant from judgment entered 6 April 2010 by Judge Jack W. Jenkins in Superior Court, Carteret County. This case was originally heard in the Court of Appeals on 16 August 2011, and an unpublished opinion was issued 20 September 2011, *State v. Poole*, ___ N.C. App. ___, 716 S.E.2d 268 (2011). Upon discretionary review granted by the Supreme Court and by order dated 23 August 2012 the Supreme Court vacated this Court's decision and remanded the case to the Court of Appeals for reconsideration in light of the Supreme Court's decisions in *State v. Nabors*, 365 N.C. 306 (2011), and *State v. Lawrence*, ___ N.C. ___ (2012).

*Attorney General Roy Cooper, by Assistant Attorney General Janette S. Nelson, for the State.*

*Paul Y.K. Castle for Defendant.*

McGEE, Judge.

Edward Eugene Poole, Jr. (Defendant) was convicted on 6 April 2010 of possession of a controlled substance in a local confinement facility and of having attained the status of an habitual felon. The trial

court sentenced Defendant to 120 to 153 months in prison. Defendant appealed to this Court, and this Court filed an opinion 20 September 2011 granting Defendant a new trial. *State v. Poole*, ___ N.C. App. ___, 716 S.E.2d 268 (2011) (*Poole I*). The State filed a petition for writ of supersedeas and a petition for discretionary review, which motions the Supreme Court granted in an order dated 23 August 2012. The Supreme Court vacated the decision of this Court in *Poole I* and remanded to this Court for reconsideration in light of the Supreme Court's decisions in *State v. Nabors*, 365 N.C. 306, 718 S.E.2d 623 (2011), and *State v. Lawrence*, ___ N.C. ___, 723 S.E.2d 326 (2012).

## Facts

The evidence at trial tended to show that Defendant was employed as a tree cutter by Travis Sanderson (Mr. Sanderson). Defendant testified to the following. Defendant had a falling out with Mr. Sanderson and was fired by him. Defendant called Mr. Sanderson a few days later and asked to be paid for work he had performed. Mr. Sanderson told Defendant that when he found more work, he would "get back" to Defendant. Mr. Sanderson later called Defendant and told Defendant that he had "picked up" a girl and that the girl wanted Mr. Sanderson to get her some drugs. Defendant was a recovering drug addict, did not want to purchase drugs for Mr. Sanderson, and initially refused to do so. Mr. Sanderson called Defendant several more times and eventually approached Defendant in person.

Mr. Sanderson promised to employ Defendant on a large tree-cutting job, but only if Defendant obtained drugs for him. Defendant agreed. At trial, Mr. Sanderson testified that he had contacted law enforcement officers in order to work as an informant to arrange a drug transaction with Defendant as a target. Mr. Sanderson admitted he made up the story about a woman seeking drugs.

Mr. Sanderson's drug deal with Defendant occurred on 6 October 2008 in the parking lot of a fast-food restaurant. Mr. Sanderson met with Defendant and gave him $300.00 to buy the drugs. Defendant drove away and returned several hours later with a bag he said contained the drugs. Defendant got into Mr. Sanderson's truck and put the bag in the center console. Defendant testified that Mr. Sanderson retrieved the bag, handed Defendant a piece of the substance contained in the bag, and got out of his truck waving the bag. Defendant realized he was about to be arrested and put the piece Mr. Sanderson had given him in his mouth. Defendant was arrested by police officers

working with Mr. Sanderson. Mr. Sanderson turned the bag containing the rest of the drugs over to the officers.

Defendant testified at trial that, while he was sitting on the ground during the arrest, he told police officers three times that Mr. Sanderson had given him "evidence." Defendant had his first appearance on 7 October 2008, and told the district court judge that he had a piece of evidence that Mr. Sanderson had given him and that he wanted to give it to his lawyer. The district court judge told the bailiff to take Defendant to speak with his lawyer, but the bailiff instead returned Defendant to the detention facility. Defendant then got the attention of a jailer, who took him to Lieutenant Ivey Eubanks (Lt. Eubanks). Defendant gave the substance to Lt. Eubanks.

Defendant was charged with possession with the intent to sell or distribute cocaine, selling and distributing cocaine, and possession of a controlled substance in a local confinement facility. Defendant filed notice of his intent to raise the defense of entrapment.

At trial, the State presented the testimony of Special Agent Nancy Gregory (Agent Gregory) of the North Carolina State Bureau of Investigation (SBI), who testified as to the results of a lab test performed on the substance that had been in Defendant's possession. Agent Gregory testified that Special Agent Brittany Dewell (Agent Dewell), performed a chemical analysis of the substance in the bag which Mr. Sanderson retained and gave to the police officers. Agent Gregory testified that the substance in the bag was crack cocaine. Agent Gregory also testified that the substance in Defendant's possession while Defendant was in the jail was "a separate case analyzed by a different chemist at the laboratory." Agent Gregory did not identify that chemist, nor did she state that she had reviewed that chemist's work. The record on appeal shows that this lab report was prepared by Agent Amanda Howell (Agent Howell). However, Agent Gregory testified that the item retrieved from Defendant was also a cocaine-based substance. Defendant did not object to Agent Gregory's testimony. The item retrieved from Defendant was admitted into evidence as the State's Exhibit 3-A (Exhibit 3-A), and the bag containing Exhibit 3-A was admitted as State's Exhibit 3 (Exhibit 3).

The trial court instructed the jury on the defense of entrapment with respect to the charges of possession with the intent to sell or distribute (PWISD) and selling and distributing a controlled substance. However, the trial court instructed the jury that the defense of entrapment did not apply to the charge of possession of a controlled

substance in a local confinement facility. The jury found Defendant not guilty of PWISD and not guilty of selling and distributing a controlled substance. The jury found Defendant guilty of possession of a controlled substance in a local confinement facility.

<u>Analysis</u>

**[1]** Defendant first argues:

> The trial court committed plain error in admitting the testimony of SBI Agent Nancy Gregory in regard to an alleged controlled substance . . . and also admitting the laboratory report on which Agent Gregory relied in her testimony . . . because the laboratory report at issue had been prepared by a non-testifying SBI agent and Agent Gregory testified solely based on the laboratory report prepared by the non-testifying agent, in violation of . . . Defendant's right to confrontation guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution."

In light of our Supreme Court's decisions in *State v. Nabors*, 365 N.C. 306, 718 S.E.2d 623 (2011) and *State v. Lawrence*, ___ N.C. ___, 723 S.E.2d 326 (2012), we disagree.

At trial, Defendant failed to object to the admission of Agent Gregory's testimony identifying Exhibits 3 and 3-A as a schedule II, cocaine-based substance, and to the lab report upon which Agent Gregory's testimony was based. Defendant argues, however, that the trial court's admission of Agent Gregory's testimony and the lab report was plain error.

> In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(a)(4); *see also State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." Moreover, because plain error is to be "applied cautiously and

only in the exceptional case," the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]"

*Lawrence,* ___ N.C. at ___, 723 S.E.2d at 334 (citations omitted).

"The Confrontation Clause of the Sixth Amendment bars admission of testimonial evidence unless the declarant is unavailable to testify and the accused has had a prior opportunity to cross-examine the declarant." *State v. Locklear,* 363 N.C. 438, 452, 681 S.E.2d 293, 304 (2009) (citations omitted). "[F]orensic analyses qualify as 'testimonial' statements, and forensic analysts are 'witnesses' to which the Confrontation Clause applies." *Id.* at 452, 681 S.E.2d at 304-05 (citation omitted). This bar to the admission into evidence of forensic analyses performed by non-testifying analysts, whom a defendant has not had a prior opportunity to cross-examine, applies to in-court testimony as well as to documents containing forensic analyses, such as lab reports. *Id.* at 451-52, 681 S.E.2d at 304.

In *State v. Brewington,* 204 N.C. App. 68, 78, 693 S.E.2d 182, 189 (2010), this Court stated a four-part test for determining whether forensic analysis evidence runs afoul of the Confrontation Clause. Under the four-part test, our Court must:

(1) determine whether the [evidence] at issue is testimonial; (2) if the [evidence] is testimonial, ascertain whether the declarant was unavailable at trial and defendant was given a prior opportunity to cross-examine the declarant; (3) if the defendant was not afforded the opportunity to cross-examine the unavailable declarant, decide whether the testifying expert was offering an independent opinion or merely summarizing another non-testifying expert's report or analysis; and (4) if the testifying expert summarized another non-testifying expert's report or analysis, determine whether the admission of the [evidence] through another testifying expert is reversible error.

*Id.* Applying this test, the *Brewington* Court found that a lab report prepared by a non-testifying analyst was inadmissible because the defendant did not have a prior opportunity to cross-examine the non-testifying analyst. *Id.* at 78-79, 693 S.E.2d at 189. This Court further found that it was "clear from the testimony of [the testifying analyst] that she had no part in conducting any testing of the [alleged controlled] substance, nor did she conduct any independent analysis of the substance." *Id.* at 80, 693 S.E.2d at 190. Accordingly, this Court determined that the testifying analyst in *Brewington*:

merely reviewed the reported findings of [the non-testifying agent], and testified that if [the non-testifying agent] followed procedures, and if [the non-testifying agent] did not make any mistakes, and if [the non-testifying agent] did not deliberately falsify or alter the findings, then [the testifying agent] "would have come to the same conclusion that she did."

*Id.* Because the defendant had not been afforded the opportunity to cross-examine the non-testifying analyst, the *Brewington* Court held that the admission into evidence of the testifying analyst's testimony also violated the Confrontation Clause. *Id.*

This Court applied *Brewington*'s four-part test in *State v. Williams*, 208 N.C. App. 422, 702 S.E.2d 233 (2010). In *Williams*, we determined that the testimony of a chemist identifying a substance as cocaine-based was inadmissible. The *Williams* decision focused on (1) the fact that the chemist's testimony was based upon an inadmissible lab report prepared by a different non-testifying chemist; and (2) that the testifying chemist did not personally perform any tests or witness any tests being performed on the alleged cocaine-based substance. *Id.* at 427-28, 702 S.E.2d at 237-38. In reaching its holding, the *Williams* Court noted that, in *State v. Hough*, 202 N.C. App. 674, 690 S.E.2d 285 (2010), this Court reached a different conclusion where a forensic chemist's testimony "was substantively the same as the testimony given by the expert" in both *Brewington* and *Williams*. *Id.* at 427, 702 S.E.2d at 237. However, the *Williams* Court concluded that "*Brewington* correctly emphasizes the importance of cross-examination as a tool to expose, among other things, the care (or lack thereof) with which a chemist conducted tests on a substance." *Id.*

In the present case, Defendant argues that both Exhibits 3 and 3-A, as well as the testimony of Agent Gregory based upon the same lab report, were inadmissible. The lab report prepared by Agent Howell was a forensic analysis prepared for the prosecution of a criminal charge and was therefore "testimonial" evidence. *Locklear* at 452, 681 S.E.2d at 304-05 (citation omitted). Agent Howell was unavailable to testify at trial because she "was not released from a subpoena from another county[.]" The State has failed to show that Defendant was given a prior opportunity to cross-examine Agent Howell. Accordingly, the admission into evidence of the lab report violated Defendant's confrontation right. *See id.* at 452, 681 S.E.2d at 305.

Defendant also argues that Agent Gregory's testimony, based upon the inadmissible lab report, was likewise inadmissible. In the present case, Agent Gregory testified concerning her review of a forensic analysis performed by another agent in connection with the prosecution of a criminal charge; Agent Gregory's testimony was therefore "testimonial." Agent Gregory's testimony was based upon the lab report prepared by Agent Howell, and as noted above, the State has failed to show that Defendant was given a prior opportunity to cross-examine Agent Howell. We must therefore determine whether Agent Gregory "was offering an independent opinion or merely summarizing another non-testifying expert's report or analysis[.]" *Brewington*, 204 N.C. App. at 78, 693 S.E.2d at 189.

Agent Gregory testified that Exhibit 3-A was analyzed by a chemist, other than herself, in the SBI laboratory. Although Agent Gregory testified that she reviewed "the case file . . . before it was published to the officers," the record contains no indication that Agent Gregory personally performed or witnessed any tests performed on Exhibit 3-A. Notably, Agent Gregory testified that she was called in at 11:00 a.m. on the day of trial to serve as a "substitute analyst" in place of Agent Howell, who had originally been subpoenaed to testify in Defendant's case. As in *Williams*, we find the following facts to be decisive: there is no indication in the record that Agent Gregory performed any tests on Exhibit 3-A, nor is there any indication that Agent Gregory was present when Agent Howell performed tests on Exhibit 3A. *See Williams*, 208 N.C. App. at 427-28, 702 S.E.2d at 237-38. We therefore conclude that Agent Gregory was "merely summarizing another non-testifying expert's report or analysis[,]" *Brewington*, 204 N.C. App. at 78, 693 S.E.2d at 189, and that the admission of Agent Gregory's testimony was error.

Finally, we must determine "whether the admission of the [evidence] through another testifying expert is reversible error." *Id.* Defendant argues that the erroneous admission of the lab report and Agent Gregory's testimony identifying Exhibit 3-A as cocaine constituted plain error because, without the admission of that evidence, the State would have failed to meet its burden of proving every element of the offense—possession of a controlled substance in a local confinement facility—beyond a reasonable doubt. Defendant specifically argues that, without the improperly admitted evidence, the State failed to prove that Exhibit 3-A was a controlled substance. We disagree.

The offense of possession of a controlled substance in a local confinement facility requires proof that a defendant was in possession of a controlled substance. *See* N.C. Gen. Stat. § 90-95(a)(3) and (e)(9) (2009). As explained above, in *Williams*, 208 N.C. App. at 427-28, 702 S.E.2d at 237-38, this Court held that expert testimony identifying evidence as cocaine was admitted in error. The *Williams* Court then determined that, other than the improperly admitted evidence, the only proof offered to show the identity of the substance was the testimony of two police officers who identified the substance as "crack cocaine" and a statement by the defendant admitting that the substance was cocaine. *Id.* at 428, 702 S.E.2d at 238. The *Williams* Court concluded that the "testimony of defendant and police officers alone, despite both officers' credentials and experience, [wa]s insufficient to show that the substance possessed was cocaine. The State must still present evidence as to the chemical makeup of the substance." *Id.* (citations omitted).

The Supreme Court addressed this issue in *Nabors*. In *Nabors*, the State presented lay testimony as evidence of the defendant's possession of cocaine, but did not present expert testimony as to the chemical analysis of the substance. *Nabors*, 365 N.C. at 311-12, 718 S.E.2d at 626. This Court concluded that the State's evidence was insufficient to prove an essential element of the crime because of the absence of expert testimony " 'to establish the identity of the controlled substance beyond a reasonable doubt.' " *State v. Nabors*, 207 N.C. App. 463, 472, 700 S.E.2d 153, 159 (2010) (citation and brackets omitted).

The Supreme Court reversed this Court's decision on the grounds that, "while the State has the burden of proving every element of the charge beyond a reasonable doubt, when a defense witness's testimony characterizes a putative controlled substance as a controlled substance, the defendant cannot on appeal escape the consequences of the testimony[.]" *Nabors*, 365 N.C. at 313, 718 S.E.2d at 627. The Supreme Court ultimately held that "the testimony of defendant's witness, which identified as cocaine the items sold to the undercover operative, provided evidence of a controlled substance sufficient to withstand defendant's motion to dismiss." *Id.* The Supreme Court further noted that, "[a]ssuming arguendo that admission of the lay testimony was error, defendant cannot satisfy his burden of showing plain error inasmuch as his own evidence established that the substance sold was cocaine." *Id.*

Our reading of *Williams* and *Nabors* compels us to conclude that a defendant's statement that he was in possession of a certain controlled substance is sufficient to satisfy the State's burden of proving that element of the offense. However, we note that in *Nabors*, the defense witness' testimony arose in the following exchange during his direct examination:

"Q. Did you have cocaine?

A. Yes, sir."

*Nabors*, 365 N.C. at 309, 718 S.E.2d at 625.

In the present case, Defendant testified that he had a "piece of dope . . . in the jail[.]" Defendant also answered affirmatively when he was asked on cross-examination: "You had the drugs in your pocket in the jail[?]" Martin Jones (Officer Jones), of the Detention Division, Carteret County Sheriff's Office, testified that he observed Lt. Eubanks retrieve a "[y]ellowish rock-like substance" from Defendant's pocket, and Lt. Eubanks similarly testified that he retrieved a "yellowish in color, rock type" substance that was consistent with being crack cocaine. The statements of Defendant, Officer Jones, and Lt. Eubanks were the only proof offered as to the identity of Exhibit 3-A, other than the improperly admitted lab report and testimony of Agent Gregory.

In *Nabors*, the Supreme Court instructed that "when *a defense witness's* testimony characterizes a putative controlled substance as a controlled substance, the defendant cannot on appeal escape the consequences of the testimony[.]" *Nabors*, 365 N.C. at 313, 718 S.E.2d at 627 (emphasis added). We must therefore determine whether Defendant's own statement that he had "a piece of dope" amounted to a "characteriz[ation of] a putative controlled substance as a controlled substance" for the purposes of satisfying the State's burden of proof.

We are unable to find any evidence in the record offered by the defense regarding a definition of the term "dope." Black's Law Dictionary's complete definition of "dope" is as follows: "1. A thick liquid used esp. for medicinal purposes. 2. *Slang.* A drug, esp. a narcotic." Black's Law Dictionary 563 (9th ed. 2009). Nonetheless, it is clear from the context of this case that Defendant was referring to the item he placed in his mouth during his arrest. In the context of this case, including Defendant's having agreed to purchase "drugs" for Mr.

Sanderson, however reluctantly, it is clear that Defendant was refer-ring to some illicit substance.

While Defendant's testimony concerning his having been in pos-session of "dope" or "drugs" does not in any way indicate what type of "dope" or "drugs" he was in possession of or indicate what sched-ule of controlled substance was involved, we hold that it does clearly provide evidence of Defendant's having been in possession of a con-trolled substance. Because Defendant was charged only with having been in possession of a controlled substance in a local confinement facility, we conclude Defendant's "own evidence established that the substance was" a controlled substance. *Nabors*, 365 N.C. at 313, 718 S.E.2d at 627. We therefore conclude that Defendant has not "satis-fied his burden of showing plain error" arising from the erroneous admission of the lab report and Agent Gregory's testimony identifying Exhibit 3-A as cocaine. *Id.*

### Ineffective Assistance of Counsel

[2] Defendant also argues that he received ineffective assistance of counsel. "To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was defi-cient and then that counsel's deficient performance prejudiced his defense." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (citation omitted). "Deficient performance may be established by showing that counsel's representation fell below an objective stan-dard of reasonableness." *Id.* (citation and quotation marks omitted). "Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confi-dence in the outcome." *Id.* (citations and quotation marks omitted).

In the present case, Defendant argues that his trial counsel's fail-ure to object to the admission of the lab report and Agent Gregory's identification testimony constituted ineffective assistance of counsel. As stated above, Defendant must show that his trial counsel's failure to object prejudiced him. *Id.* In light of *Nabors*, which was decided after Defendant's trial, and after our Court's first opinion in this mat-ter, a determination of whether Defendant was prejudiced by his trial counsel's failure to object will involve an analysis of the evidence offered by defense witnesses concerning the identity of the con-trolled substance and his counsel's trial strategy. Defendant has not made any arguments in his original brief concerning that aspect of this case.

It is well established that ineffective assistance of counsel claims "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." Thus, when this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing defendant to bring them pursuant to a subsequent motion for appropriate relief in the trial court.

*State v. Thompson*, 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (citation omitted). We therefore dismiss Defendant's claim for ineffective assistance of counsel without prejudice to his ability to file a motion for appropriate relief in the trial court.

No plain error in part, dismissed in part.

Judges ERVIN and McCULLOUGH concur.