Justice HUDSON
dissenting.
The majority opinion here begins by declaring that the expert gave her opinion “based upon her independent analysis of testing per *15 formed by another,” without a clear explanation of why this matters in the context of Confrontation Clause analysis.[1] The majority goes on to cite Williams v. Illinois for the proposition that “a qualified expert may provide an independent opinion based on otherwise inadmissible out-of-court statements.” The Court in Williams did not hold — nor do any other cases — that expert testimony like that here, based entirely on testing done by an absent analyst for the sole purpose of prosecuting this defendant, would be free of a Sixth Amendment Confrontation Clause violation if the expert claimed her opinion was “independent,” when the record shows manifestly that it was not. Nor did the Court in Williams hold, as the majority here does, that “when an expert states her own opinion, without merely repeating out-of-court statements, the expert is the person whom the defendant has the right to cross-examine.” In my view, the Supreme Court cases mean instead that the testimony Agent Ray gave here that the substance was cocaine — based on testing done by an absent analyst (Agent Mills) who was not cross-examined by defendant — violated defendant’s right to confront Mills, as protected by the Sixth Amendment and explained in Supreme Court decisions from Crawford to Williams. Because I also conclude that this constitutional error is not harmless beyond a reasonable doubt, I would grant defendant a new trial. I respectfully dissent.[2]
Before engaging the substantive issue here, I believe a review of recent Confrontation Clause jurisprudence is in order, if only to high *16 light how fax afield the majority has gone. In Crawford v. Washington the United States Supreme Court rejected as unsound its own earlier decision in Ohio v. Roberts, 448 U.S. 56, 65-66, 100 S. Ct. 2531, 2538-39 (1980). Instead, the Court concluded in Crawford that a defendant’s Confrontation Clause rights are violated when out-of-court testimonial statements are admitted without a showing that the declarant is unavailable to testify and that the defendant had a prior opportunity to cross-examine that person. Crawford, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004). In Roberts the Court allowed hearsay testimony if it possessed “adequate ‘indicia of reliability,’ ” 448 U.S. at 66, 100 S. Ct. at 2539; however, in Crawford the Court stated that the Confrontation Clause “commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination,” 541 U.S. at 61,124 S. Ct. at 1370. In rejecting the reliability standard the lower courts had applied in the case, the Supreme Court wrote in Crawford that “[e]ach of the courts also made assumptions that cross-examination might well have undermined.” Id. at 66, 124 S. Ct. at 1372.
The Supreme Court declined to announce a complete definition of “testimonial” in Crawford. Id. at 68, 124 S. Ct. at 1374. Relevant here, however, the Supreme Court subsequently addressed the meaning of “testimonial” when discussing certified lab reports identifying a substance as cocaine in Melendez-Diaz v. Massachusetts, 557 U.S. 305, 307-08, 129 S. Ct. 2527, 2530-31 (2009). There the Court concluded that “[lab] analysts’ affidavits were testimonial statements, and the analysts were ‘witnesses’ for purposes of the Sixth Amendment.” Id. at 311, 129 S. Ct. at 2532. Again, the Court placed heavy emphasis on the power of cross-examination to expose weaknesses in such testimony: “Like the eyewitness who has fabricated his account to the police, the analyst who provides false results may, under oath in open court, reconsider his false testimony.” Id. at 319, 129 S. Ct. at 2537. “Like expert witnesses generally, an analyst’s lack of proper training or deficiency in judgment may be disclosed in cross-examination.” Id. at 320, 129 S. Ct. at 2537. Melendez-Diaz establishes that absent a stipulation or a statutory notice-and-demand waiver, a lab report of this type may not be admitted “without offering a live witness competent to testify to the truth of the statements made in the report.” Bullcoming v. New Mexico, _ U.S. _, _, 131 S. Ct. 2705, 2709 (2011).
In Bullcoming, the Supreme Court then addressed the next logical question flowing out of Melendez-Diaz, specifically
*17 whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification — made for the purpose of proving a particular fact — through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification.
Id. at_, 131 S. Ct. at 2710. Although the expert in Bullcoming was competent to testify to the lab processes, the Court held that such “surrogate testimony” did not satisfy the requirements of the Confrontation Clause. Id. at_, 131 S. Ct. at 2710. The lower appellate court had held that such testimony was permissible because the analyst had “ ‘simply transcribed the resul[t] generated by the gas chromatograph machine’ ” and the real-witness against the defendant was the actual machine. Id. at__, 131 S. Ct. at 2714 (alteration in original). The Supreme Court rejected this argument, reasoning that the testing analyst’s report was “more than a machine-generated number.” Id. at_, 131 S. Ct. at 2714. The Court noted that the testing analyst’s affidavit certified facts such as an unbroken chain of custody, the particular test performed, and the analyst’s adherence to protocol in performing that test. Id. at_, 131 S. Ct. at 2714. “These representations, relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross-examination.” Id. at__, 131 S. Ct. at 2714. The State also argued that its proposed testifying expert could properly testify because he was an expert with respect to the gas chromatograph machine and the laboratory’s procedures. Id. at_, .131 S. Ct. at 2715. The Court disagreed, recognizing that cross-examination of a surrogate analyst would be ineffective to expose any weaknesses in the lab reports, thus failing to satisfy the Confrontation Clause:
But surrogate testimony of the kind [the testifying expert] was equipped to give could not convey what [the testing analyst] knew or observed about the events his certification concerned, i.e., the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst’s part.
Id. at _., 131 S. Ct. at 2715 (footnote omitted). Ultimately, the Supreme Court concluded that a defendant’s right “is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist.” Id. at__,, 131 S. Ct. at 2710.
*18 Most recently, in Williams v. Illinois the Supreme Court granted certiorari to address whether Crawford prohibits “an expert from expressing an opinion based on facts about a case that have been made known to the expert but about which the expert is not competent to testify,”_U.S._,__, 132 S. Ct. 2221, 2227 (2012) (plurality), or, as articulated by Justice Sotomayor in her concurrence in Bullcoming, to address the situation in which “an expert -witness [is] asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence,” Bullcoming, __U.S. at_, 131 S. Ct. at 2722 (Sotomayor, J., concurring in part). In Williams an expert witness offered her opinion regarding a DNA match between samples analyzed in two separate reports, one of which was not entered into evidence._U.S. at_, 132 S. Ct. at 2229-30. The opinion in Williams revealed a fractured court, but a majority — the four Justice plurality and Justice Thomas — found that the underlying report was not testimonial, meaning there was no Confrontation Clause violation. Id. at_, 132 S. Ct. at 2242-44 (plurality); id. at_, 132 S. Ct. at 2255 (Thomas, J., concurring in the judgment).[3] Importantly, the plurality distinguished the earlier cases from the Williams testimony, in which the expert testified that the two DNA profiles were from the same person, not that either or both were accurate or true: “The Cellmark report is very different. It plainly was not prepared for the primary purpose of accusing a targeted individual.” Id. at_, 132 S. Ct. at 2243 (plurality). “In Hammon and every other post-Crawford case in which the Court has found a violation of confrontation right, the statement at issue had the primary purpose of accusing a targeted individual.” Id. at_, 132 S. Ct. at 2243 (plurality).
In the Williams plurality opinion, Justice Alito noted that the Court’s conclusion to allow the testimony of the DNA expert
*19 is entirely consistent with Bullcoming and Melendez-Diaz. In those cases, the forensic reports were introduced into evidence, and there is no question that this was done for the purpose of proving the truth of what they asserted: in Bullcoming that the defendant’s blood alcohol level exceeded the legal limit and in Melendez-Diaz that the substance in question contained cocaine. Nothing comparable happened here.
Id. at_, 132 S. Ct. at 2240 (plurality). But in the case before us, something quite comparable happened — though the report itself was not admitted, its essential contents were delivered via surrogate testimony that depended entirely upon review of the reports and involved no independent analysis. Further, it cannot be questioned that the primary purpose of the lab report here was to accuse a targeted individual. As such, the result should be the same in that the testimony here violated the Sixth Amendment Confrontation Clause, as in Bullcoming and Melendez-Diaz.
Were there any indication in the record that Agent Ray did “independent analysis,” I could perhaps agree with the majority. There is none. She testified on direct examination, based entirely on her review of tests and notes by Agent Mills:
Q. And for trial today were you asked to review the chemical analysis that was performed on Item Number 9, control number 16826?
A. Yes, I did.
Q. When you conducted this peer review, specifically what documents did you review?
A. I reviewed the drug chemistry worksheet or the lab notes that the analyst wrote her notes on and the data that came from the instrument that was in the case file and then I also reviewed the data that was still on the instrument and made sure that was all there too.
She then responded that, based upon this review, her “independent opinion” was that the substance “was cocaine.” But, on cross-examination she testified, among other things, to the following:
Q. All right. Now just to go back to the beginning, you have done no testing of your own on Item Number 9; correct?
*20 A.. No, I have not.
Q. And so any opinions you give in court about the nature of this substance are based entirely on testing done by someone else?
A. Correct.
Q. And you were not present when those tests were performed, were you?
A. No, I was not.
Q. And you didn’t even work there until approximately two years later; correct?
A. Correct.
She acknowledged repeatedly that she could not personally verify anything about the way the tests were done and said, “I only know of what’s on the drug worksheet,” and “I can only say according to the worksheet.” “[T]he [Confrontation] Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another’s testimonial statements provides a fair enough opportunity for cross-examination.” Bullcoming,_ U.S. at_, 131 S. Ct. at 2716 (majority). Because the expert here (Agent Ray) simply viewed and agreed with the test results of another (Agent Mills), while she performed no testing and was not present for those tests, I must conclude her testimony violates the Confrontation Clause when analyzed according to the jurisprudence of Crawford, Melendez-Diaz, Bullcoming, and Williams. The defendant here had the right under the Sixth Amendment Confrontation Clause to cross-examine Mills, not just Ray.
As stated above, having implicitly acknowledged that the report was testimonial and knowing the testing analyst was absent, the majority asserts that Agent Ray offered an independent opinion on the identity of the substance tested based on the lab reports. As I understand the opinion, the only “evidence” the majority points to in support of this holding is the questioning by the State at trial. Agent Ray was asked, “What is your independent expert opinion?” She answered that “the substance was cocaine.” However, careful review of the testimony, both on direct and cross-examination, demonstrates that her opinion was in no way independent — all her knowledge and opinions about the testing process and the substance were based entirely on the review and analysis by Agent Mills, who had left the *21 lab two years before Ray’s employment even began. Ray testified that she conducted an “administrative” and a “technical” review of Mills’s file (which the prosecutor characterized in his questions as a “peer review” of the testing analyst’s work), including reading the report notes and results off the machine. Agent Ray was not asked about and did not explain any “analysis” that she performed; instead, she explained that her administrative and technical reviews were “to make sure there is [sic] no mistakes,” as with spelling or data input, and to verify that she would have reached the same conclusion based on the data generated by the testing agent. In my view, this is not an “independent” opinion as that term is used by the Supreme Court.
The majority states that “[a]s part of her review, Ray analyzed the ‘reviewable data’ generated by the GCMS machine. Ray testified that the machine internally records the data, and there is no way to make alterations to what is recorded.” (Emphasis added.) The majority fails to consider how the original testing analyst may have handled or altered the substance before it was placed in the machine, or how it was entered into the machine. “Forensic evidence is not uniquely immune from the risk of manipulation.” Melendez-Diaz, 557 U.S. at 318, 129 S. Ct. at 2536.
Confrontation is one means of assuring accurate forensic analysis. While it is true, as the dissent notes, that an honest analyst will not alter his testimony when forced to confront the defendant, the same cannot be said of the fraudulent analyst. Like the eyewitness who has fabricated his account to the police, the analyst who provides false results may, under oath in open court, reconsider his false testimony. And, of course, the prospect of confrontation will deter fraudulent analysis in the first place.
Confrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well. Serious deficiencies have been found in the forensic evidence used in criminal trials. . . . Like expert witnesses generally, an analyst’s lack of proper training or deficiency in judgment may be disclosed in cross-examination.
Id. at 318-19, 129 S. Ct. at 2536-37.[4]1 would hold that the type of “peer *22 review” conducted by Agent Ray in this case is constitutionally deficient because it brings in key substantive evidence from the lab report without allowing for the type of cross-examination required by the United States Supreme Court to avoid a violation of a defendant’s Confrontation Clause rights.
The majority also states that “the testifying expert was the witness whom the defendant had the right to confront. Defendant was able to cross-examine Ray fully concerning all aspects of her testimony.” But the United States Supreme Court has stated that “the [Confrontation] Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another’s testimonial statements provides a fair enough opportunity for cross-examination.” Bullcoming,_U.S. at_, 131 S. Ct. at 2716. Because she was not present, Agent Ray could not possibly testify to the procedures followed, or not followed, by Agent Mills, the nontestifying analyst; cross-examination of Agent Ray is not a “fair enough opportunity for cross-examination” under the Confrontation Clause. Id. at_, 131 S. Ct. at 2716. Again, the defendant had the right to cross-examine Agent Mills.
The majority correctly states that “raw, machine-generated data” are neither hearsay nor testimonial. The majority relies heavily on the fact that Agent Ray looked at such “raw, machine-generated data” when forming her allegedly independent opinion. In doing so, the majority oversimplifies Agent Ray’s review process and testimony and glosses over the portions that most clearly implicate the Confrontation Clause. Agent Ray did not simply look at graphs produced from machines and testify to those results. Rather, she testified:
Q. When you conducted this peer review, specifically what documents did you review?
A. I reviewed the drug chemistry worksheet or the lab notes that the analyst wrote her notes on and the data that came from the instrument that was in the case file and then I also reviewed the data that was still on the instrument and made sure that was all there too.
Immediately after this exchange, Agent Ray was asked to “list the tests that were conducted on the substance in control number 16826[.]” She responded, “A color test was performed, a melting point *23 was performed, and then the GCMS was used.” She was later asked, “[C]an you tell us what her result appears to have been?” She answered, “[0]n the color test it has a positive sign with a circle around it and then says blue underneath that.” Agent Ray did not simply evaluate raw data — she reviewed the lab report and testified to some of its contents, specifically which tests the nontestifying analyst conducted and the results of those tests. Because Agent Ray was not present for those tests, she had to rely entirely on the certification of the testing analyst that those tests were in fact performed, and performed in compliance with operating procedure and without error. Because that certification “reported more than a machine-generated number____[t]hese representations, relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross-examination.” Bullcoming,_U.S. at_, 131 S. Ct. at 2714. Here, as in Crawford (and Bullcoming), it is clear from Agent Ray’s testimony that she, and now the majority, have relied on “assumptions that cross-examination might well have undermined.” Crawford, 541 U.S. at 66, 124 S. Ct. at 1372.[5] Had Agent Ray simply been provided the graphs and data printouts themselves, and come to conclusions based on that raw data, there might not have been a confrontation problem. See Williams,__ U.S. at_, 132 S. Ct. at 2240; but see Bullcoming,_U.S. at_, 131 S. Ct. at 2715 (“[T]he comparative reliability of an analyst’s testimonial report drawn from *24 machine-produced data does not overcome the Sixth Amendment bar.”). But as soon as she testified to past events memorialized in the testing analyst’s lab notes and drug worksheet, Agent Ray implicated the Confrontation Clause.
Further, even if she had only relied on raw data in forming her opinion, Agent Ray’s expert opinion would be relevant only if the State provided the foundation for the data, such as how the data were generated — a foundation that would presumably require testimony from the nontestifying analyst anyway. See Williams,_U.S. at_, 132 S. Ct. at 2241 (identifying as a safeguard against circumvention of the Confrontation Clause the rule that “if the prosecution cannot muster any independent admissible evidence to prove the foundational facts that are essential to the relevance of the expert’s testimony, then the expert’s testimony cannot be given any weight by the trier of fact” (emphasis added)). In Williams, this safeguard was satisfied by “independent circumstantial evidence showing that the Cellmark report was based on a forensic sample taken from the scene of the crime.” Id. at_, 132 S. Ct. at 2240-41. Here, without entering the report itself into evidence or allowing Agent Ray to testify from the report about chain-of-custody information, there is no independent evidence establishing that the data Agent Ray reviewed were generated in fact from the sample taken from the crime scene.
Agent Ray’s testimony is also legally insufficient to prove that the substance was cocaine because her opinion was based on assumptions that the substance was properly logged and handled, the tests properly conducted, and the results properly recorded. Effectively, her opinion is “(/'everything was done properly, and if the report is accurate, then the substance is cocaine.” Without other evidence to confirm those assumptions, there is no actual proof that defendant possessed cocaine.
While the majority acknowledges that the North Carolina Rules of Evidence “must comport with constitutional requirements,” the substance of its opinion does not follow that mandate. Instead, the majority opinion relies heavily on the Rules of Evidence, which are irrelevant to the determination of whether defendant’s Confrontation Clause rights have been violated.[6] As stated by the United States *25 Supreme Court: “Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices.” Crawford, 541 U.S. at 51, 124 S. Ct. at 1364. “Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment’s protection to the vagaries of the rules of evidence ... .” Id. at 61, 124 S. Ct. at 1370. Defendant did not challenge the testimony here for violations of the Rules of Evidence but because it violated his Sixth Amendment right to confront witnesses against him. The North Carolina Rules of Evidence have no place in this discussion.
Finally, the majority has failed to set out a clear framework for lower courts to use in analyzing this type of complicated, fact-specific Confrontation Clause question. Part of our charge as a Court is to provide guidance to lower courts; thus, I have set out a methodical approach for cases in which an expert witness testifies about the results of a lab report, regardless of whether the underlying report is ultimately admitted into evidence. Viewing recent United States Supreme Court precedent as a whole, I apply a four-part analysis to address these types of cases.
First, we determine whether the underlying lab report is testimonial — if it is not, there is no Confrontation Clause violation. Compare Bullcoming,_U.S. at_, 131 S-. Ct. at 2217 (rejecting the prosecution’s argument that the lab reports were not testimonial because, according to the Court, “[a] document created solely for an ‘evidentiary purpose,’... made in aid of a police investigation, ranks as testimonial”), with Williams,_ U.S. at_, 132 S. Ct. at 2243 (deciding that the lab report in question was not testimonial because “the primary purpose of the Cellmark report, viewed objectively, was not to accuse [the defendant] or to create evidence for use at trial”) (plurality).
*26 Second, we examine whether the testifying expert personally conducted the testing, and if not, whether the State has shown that the nontestifying analyst is unavailable and that the defendant had a prior opportunity to cross-examine. If the original testing analyst testifies, there would be no Confrontation Clause violation because she could be cross-examined on the procedures and protocols she followed in conducting the tests. See Bullcoming,_U.S. at_, 131 S. Ct. at 2715. But if the original testing analyst does not appear as a witness, the State must show that she was unavailable and that defendant had a prior opportunity to cross-examine her. See Melendez-Diaz, 557 U.S. at 309, 129 S. Ct. at 2531. In the absence of such a showing, or a stipulation or waiver, neither the report itself nor the report’s conclusions can be properly received as evidence without running afoul of the Confrontation Clause. See id. at 329,129 S. Ct. at 2542; see also Bullcoming,_U.S. at_, 131 S. Ct. at 2715.
Third, if the testifying analyst is relying on another analyst’s reports, we decide whether the testifying expert offered an independent opinion based on the lab report or merely acted as a surrogate witness. The decision in Bullcoming appears to leave room for an expert who did not conduct the testing in question to offer an “independent opinion” on the fact at issue. See_U.S. at_, 131 S. Ct. at 2716 (noting that the State did not “assert that [the substitute expert] had any ‘independent opinion’ concerning Bullcoming’s [blood alcohol content]”). But the opinion must be truly independent — “surrogate testimony” that brings in the absent analyst’s test results and conclusions but cannot “convey what [the testing analyst] knew or observed about the events his certification concerned” is constitutionally insufficient. Id. at_, 131 S. Ct. at 2715.
Fourth, we decide whether any error is reversible, applying the appropriate standard of review.
In applying that structure for analysis here, I would hold that: (1) the lab report underlying Agent Ray’s statements was testimonial; (2) Agent Ray did not personally conduct the testing on the cocaine sample, and the State has not shown that the testing analyst (Mills) was unavailable and that defendant had a prior opportunity to cross-examine; (3) Agent Ray offered no independent opinion based on the lab report, merely communicating to the jury the lab report’s contents under the guise of an expert opinion; and (4) the error was not harmless beyond a reasonable doubt.
*27 In addressing the fourth component, the majority assumes for the sake of argument that admission of the testimony violated the Confrontation Clause, but finds the error harmless. As the majority acknowledges, the State bears the burden of proving that this constitutional error was harmless beyond a reasonable doubt. See N.C.G.S. § 15A-1443(b) (2011). Under subsection 15A-1443(b), this Court presumes such a violation to be prejudicial. Id. Our case law shows that in order to overcome this presumption, we often require “overwhelming” evidence of a defendant’s guilt. See, e.g., State v. Bunch, 363 N.C. 841, 845-46, 689 S.E.2d 866, 869 (2010) (“ ‘[T]he presence of overwhelming evidence of guilt may render error of constitutional dimension harmless beyond a reasonable doubt.’ ” (alteration in original) (quoting State v. Autry, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988))). Here, because I would hold that Agent Ray’s testimony was inadmissible, the only remaining evidence the State presented to prove that the substance was cocaine was (1) the officer’s testimony that defendant admitted the fact to him at the scene of the crime, and (2) the officer’s testimony that the substance “appearfed] to be powder cocaine.” This is hardly overwhelming evidence because it turns entirely on the officer’s credibility.
Further, in its harmless error analysis the majority misapplies State v. Nabors, 365 N.C. 306, 718 S.E.2d 623 (2011). There, we applied the plain error standard of review, not constitutional harmless error review as we do here. There, unlike here, the defendant put on affirmative evidence that the substance in question was cocaine but that it belonged to someone else; in addition, he challenged the sufficiency of the evidence through a motion to dismiss, rather than by objecting to the testimony identifying the controlled substance. Id. at 312-13, 718 S.E.2d at 626-27. For sufficiency purposes we consider all of the evidence — including incompetent evidence — in the light most favorable to the State. Thus, in Nabors, the defendant had to prove that the trial court’s error in admitting lay testimony identifying a controlled substance had a probable impact on the outcome of trial, which he could only do by showing that all other competent and incompetent evidence, taken in the light most favorable to the State, was likely insufficient to support the charges. Here, by contrast, the State bears the burden of proving the constitutional error was harmless beyond a reasonable doubt. As such, these cases are entirely different.
Here the entire prosecution of defendant depends on Agent Ray’s testimony to prove that the substance was cocaine. Without her testimony all that remains is an uncorroborated assertion by an officer on *28 the witness stand that defendant agreed the substance was cocaine. Yet defendant also testified and denied that he had said the substance was cocaine. Here the credibility of all those statements must be weighed by the jury, by contrast to the sufficiency analysis in Nabors, in which only evidence supporting the State’s case can be considered. The officer’s testimony cannot be considered overwhelming under the constitutional harmless error standard we apply here. I conclude that the State has failed to show that the constitutional error here was harmless beyond a reasonable doubt and would hold that defendant should receive a new trial on the charge of possession of cocaine.
This case can be summarized quite simply: Agent Ray provided the only substantive evidence about the central issue in the case — the identity of a chemical substance found in defendant’s possession— based entirely on test results produced and reported by another analyst (Agent Mills), whom defendant had no opportunity to cross-examine. As such, he had no way to question the reliability of the process by which those test results were obtained. Under Crawford, Melendez-Diaz, Bullcoming, and Williams, this is a quintessential Sixth Amendment violation. “The Confrontation Clause may make the prosecution of criminals more burdensome, but that is equally true of the right to trial by jury and the privilege against self-incrimination. The Confrontation Clause — like those other constitutional provisions — is binding, and we may not disregard it at our convenience.” Melendez-Diaz, 557 U.S. at 325, 129 S. Ct. at 2540. Offering defendant the opportunity to cross-examine Agent Mills, not just Agent Ray, was required by the Sixth Amendment. Accordingly, I respectfully dissent.
Chief Justice PARKER joins in this dissenting opinion.

. The independence, or lack thereof, of the testifying expert’s opinion is only relevant to the Confrontation Clause analysis if it is first established that the lab report underlying the expert’s testimony is itself testimonial (it is) and that the analyst who prepared the report did not testify (she did not).

. Before reaching the “dispositive issue,” the majority addresses procedure and concludes that defendant has not adequately objected to the admission of Ray’s testimony, which it says should be reviewed for plain error. In my opinion, this discussion, and any effort to couch this case in terms of plain error, is entirely misplaced. The State did not argue that review here should be for plain error; its argument heading in the brief is: “The Court of Appeals erred by finding any error was not harmless beyond a reasonable doubt.” The argument then addresses what it appropriately notes is the proper standard for review of alleged constitutional error. Moreover, the State has not contended that the issue was not adequately preserved. Indeed, the trial court, at defendant’s request, conducted voir dire on the admissibility of the testimony and reports and ruled the reports out, but found the testimony allowable. On direct examination, at the only point the witness was asked for an “opinion,” defense counsel objected. After the testimony was admitted and cross-examined, defense counsel moved to strike the expert’s testimony, and the transcript reveals several pages of colloquy before the motion to strike was denied. As such, defendant has preserved as well as he could the one issue that matters here, to wit, Agent Ray’s opinion (based on another’s testing) that the substance was cocaine.

. Though the majority acknowledges the split opinion in Williams, the majority still appears to ascribe precedential value to the plurality opinion, classifying it as the narrowest grounds among the concurring opinions. I disagree. Neither the plurality’s reasoning nor Justice Thomas’s concurrence is narrower; they are simply different. Justice Thomas agreed with the plurality that the report was not testimonial, but for a different reason — insufficient formality. On the other hand, he agreed with the four dissenters that the Cellmark report was offered for the truth of the matter asserted therein. Thus, I believe the only firm conclusions we can draw from Williams are that the lab report there was not testimonial and that five justices agreed it was offered for its truth. These conclusions appear to apply only to the precise facts in Williams. Because it is clear that the lab report here was testimonial, as well as offered for its truth, Williams gives us little additional guidance.

. In North Carolina recent events have proved that these concerns about forensic testing are more than just mere speculation. See Chris Swecker & Michael Wolf, An Independent Review of the SBI Forensic Laboratory 4 (2010) ("This report raises serious issues about laboratory reporting practices from 1987-2003 and the potential that information that was material and even favorable to the defense of criminal charges filed was withheld or misrepresented.”); see also Paul C. Giannelli, The North Carolina *22 Crime Lab Scandal, 27 Crim. Just., Spring 2012, at 43, 43 (“This failure of the North Carolina criminal justice system is breathtaking.”).

. Ray testified, for example:
Q. You have to assume she followed the standard operating procedures, correct?
A. Correct.
Q. Can you personally verify anything about the conditions of her lab suite at the time?
A. No, I cannot.
Q. Can you verify anything about her state of mind at the time?
A. No, I cannot.
Q. Can you verify that she wore gloves when she performed these tests?
A. No, I cannot.
Q. Can you verify how many different samples she tested that day?
A. No.
Q. Have you run a GCMS on this substance?
A. No, I did not.

. At the heart of the majority opinion here is the assertion that as long as a testifying expert is cross-examined, the Confrontation Clause is satisfied. The majority appears to rely on State v. Fair, 354 N.C. 131, 557 S.E.2d 500 (2001), cert. denied, 535 U.S. 1114, 122 S. Ct. 2332 (2002), and State v. Huffstetler, 312 N.C. 92, 322 S.E.2d 110 (1984), cert. denied, 471 U.S. 1009, 105 S. Ct. 1877 (1985), for this assertion. These cases were based entirely on the now-discredited reliability framework established by *25 the United States Supreme Court in Ohio v. Roberts, 448 U.S. at 65-66, 100 S. Ct. at 2538-39. As pointed out by the majority, Roberts was explicitly overturned by the United States Supreme Court in Crawford: “The [Roberts] framework is so unpredictable that it fails to provide meaningful protection from even core confrontation violations.” 541 U.S. at 63, 124 S. Ct. at 1371. See also Whorton v. Bockting, 549 U.S. 406, 416, 127 S. Ct. 1173, 1181 (2007) (“The Crawford rule is flatly inconsistent with the prior governing precedent, Roberts, which Crawford overruled.”). Relying on Fair and Huffstetler, the majority concludes that because “ ‘[i]t is the expert opinion itself, not its underlying factual basis, that constitutes substantive evidence,’ ” Fair, 354 N.C. at 162, 557 S.E.2d at 522, and that so long as the information relied upon by the testifying expert “[allows] the factfinder ‘to understand the basis for the expert’s opinion and to determine whether that opinion should be found credible,’ ” Huffstetler, 312 N.C. at 108, 322 S.E.2d at 121, there is no Confrontation Clause violation. To the extent that Huffstetler and Fair rely on the rejected Roberts framework, they cannot be considered good law and have no place in our discussion of this issue.